[No. B230770. Second Dist., Div. Three. Dec. 21, 2012.]

CLIVE CUSSLER et al., Plaintiffs, Cross-defendants, and Respondents, v. CRUSADER ENTERTAINMENT, LLC, Defendant, Cross-complainant and Appellant.

[No. B232046. Second Dist., Div. Three. Dec. 21, 2012.]

CLIVE CUSSLER et al., Plaintiffs, Cross-defendants, and Appellants, v. CRUSADER ENTERTAINMENT, LLC, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Greenberg Glusker Fields Claman & Machtinger, Bertram Fields, Elisabeth A. Moriarty and Caroline S. Heindel for Plaintiffs, Cross-defendants and Appellants and for Plaintiffs, Cross-defendants and Respondents.

O'Melveny & Myers, Marvin S. Putnam and Jessica L. Stebbins for Defendant, Cross-complainant and Appellant.

## OPINION

**KITCHING, J.**—Defendant Crusader Entertainment, LLC, now known as Bristol Bay Productions (Crusader), and plaintiffs Clive Cussler and his affiliated entities (Cussler)[1] each appeal a postjudgment order. There are three main issues on appeal. The first is whether the trial court abused its discretion by finding there was no prevailing party for purposes of awarding attorney fees. The second is whether the trial court abused its discretion by awarding Cussler 7 percent interest on restitution he recovered pursuant to Code of Civil Procedure section 908. This statute provides for restitution of assets collected pursuant to an erroneous judgment subsequently reversed on appeal. Finally, we must determine whether the trial court abused its discretion by awarding Crusader costs of suit. We shall conclude that the trial court did not abuse its discretion and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Contract*

Cussler is the author of a series of novels featuring the character Dirk Pitt. Crusader is a film producer. Cussler and Crusader entered into a memorandum of agreement for option and purchase of literary material dated May 9, 2001. Under the contract, Crusader had an option to purchase from Cussler the film rights to the novel Sahara and a second novel to be designated by Crusader, as well as the right to purchase additional Cussler novels. The contract further provided that, if certain conditions were satisfied, Crusader was obligated to pay Cussler $20 million in seven annual installments for the film rights to Sahara and a second novel.

Before the contract was executed, Cussler approved a screenplay (the Approved Screenplay) for the film Sahara (Paramount Pictures 2005). The contract provided that Crusader would not change the Approved Screenplay "without Cussler's written approval exercisable in his sole and absolute discretion."

---

[1] The entities are Sahara Gold, LLC, Clive Cussler Enterprises, and Sandecker, RLLP, which are owned by Mr. Cussler and his children.

The contract also prohibited Cussler from disseminating any news stories or other publicity regarding the subject matter of the contract without Crusader's approval. Additionally, the contract included several indemnification provisions, which Crusader contends provide that the prevailing party in a lawsuit between Crusader and Cussler shall recover attorney fees.

### 2. *The Relationship Between Cussler and Crusader Sours*

In November 2001, Crusader exercised its initial option to acquire from Cussler the film rights to Sahara and a second novel. Unfortunately, shortly after Crusader exercised its option, the relationship between the parties soured. Cussler contends Crusader made unacceptable changes to the Approved Screenplay. Crusader contends Cussler unreasonably withheld his approval of changes to the screenplay. Crusader also claims that Cussler breached the contract by making derogatory statements to the press about the film.

In April 2005, the film Sahara was released. It was not a commercial success. Crusader did not make a second Dirk Pitt film.

### 3. *Payments by Crusader to Cussler*

Crusader paid Cussler four of the seven annual payments due under the contract for the first two films. These payments were each approximately $2,857,143, for a total of $11,428,571. As we explain *post*, the parties disputed whether Crusader was obligated to pay Cussler the balance of the $20 million sum stated in the contract, which is $8,571,429.

### 4. *Cussler Commences This Action and Crusader Deposits Two Disputed Installments with the Superior Court*

In January 2004, before the film Sahara was released, Cussler commenced this lawsuit against Crusader by filing a complaint in Los Angeles County Superior Court. In November 2005 and October 2006, Crusader made two deposits with the court totaling $5,714,286. These deposits were for the disputed fifth and sixth installments allegedly due under the contract.

### 5. *The Operative Pleadings*

Cussler's operative complaint sets forth declaratory relief, breach of contract, and fraud causes of action. The complaint alleged that Crusader breached the contract by, inter alia, defaulting on its obligations due under the contract at the time (the fifth and sixth payments) and by denying any future obligation to pay Cussler sums due under the contract (the seventh payment).

Cussler prayed for $100 million in compensatory damages, punitive damages and a declaration that "Crusader no longer has any right or option to acquire any rights in any further Cussler novels and that . . . Crusader has no further rights of any kind" under the contract.

Crusader's operative cross-complaint alleged that Cussler "arbitrarily, irrationally, and destructively pursued his consultation and approval rights" relating to the Sahara screenplay in violation of the implied covenant of good faith and fair dealing. The cross-complaint further alleged that Cussler's disparaging statements about Sahara breached the implied covenant and the express provisions of the contract. In addition, the cross-complaint alleged Cussler fraudulently promised that he would reasonably approve the Sahara screenplay and that Cussler defrauded Crusader by falsely stating that over 100 million copies of his books had been sold.

The cross-complaint set forth causes of action for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, breach of contract by disparagement, trade libel, fraud, intentional interference with contract or prospective economic advantage, declaratory relief, fraud in the inducement, fraudulent concealment, and negligent misrepresentation.[2] Crusader sought compensatory damages in the amount of $65 million, punitive damages, and a declaration that it was relieved of any obligation under the contract to make any payment for the rights to a second picture.

### 6. *The Trial and Special Verdict*

In the spring of 2007, the superior court conducted a 14-week trial. Much of the trial concerned Cussler's alleged unreasonable behavior during the production of Sahara. Crusader argued to the jury that it was entitled to recover millions of dollars of damages as a result of Cussler's alleged breach of the implied and express provisions of the contract. Likewise, Cussler sought to recover millions of dollars of damages as a result of Crusader's alleged breach of contract, including $8,571,429 for the fifth, sixth and seventh installments allegedly due under the contract.

On May 15, 2007, the jury returned a special verdict. The jury found that both Crusader and Cussler breached the contract, but also found that neither party sustained any damages. The jury thus effectively rejected Cussler's and Crusader's breach of contract causes of action. It also rejected the fraud claims asserted by both sides. The jury, however, further found that Cussler breached the implied covenant of good faith and fair dealing and, as a proximate result, Crusader incurred $5 million in damages.

---

[2] Crusader dismissed its trade libel and tortious interference causes of action before the special verdict was presented to the jury.

Additionally, the jury answered "No" to question No. 57, which provided: "Did principal photography of the film 'Sahara' commence on or before November 6, 2003, within the meaning of the parties' agreement?" This question related to Cussler's declaratory relief claim that Crusader no longer had the option to purchase Cussler novels under the contract. The contract provided that if Crusader did not commence the "principal photography" of Sahara within 24 months of its exercise of the initial option, i.e., on or before November 6, 2003, Cussler could terminate Crusader's option to purchase the third novel.[3]

Finally, the jury answered "Yes" to question No. 60, which stated: "Based on your decisions on the parties' claims, should Crusader Entertainment be obligated to pay Cussler for the 'second picture' under the parties['] agreement?" The trial court considered this question "advisory" in nature.

### 7. Posttrial Proceedings and Judgment

In July 2007, Crusader dismissed its cause of action for declaratory relief with prejudice. As stated *ante*, Crusader had sought a declaration that it was not obligated to pay Cussler for the rights to a second film.

In July 2007, Cussler filed two motions relating to his claim for $8,571,429. In the first motion, Cussler argued the jury's response to question No. 60 required the court to enter a judgment in the amount of $8,571,429 in his favor. In the second motion, Cussler requested leave to amend his complaint to conform to proof. Cussler sought to amend his declaratory relief cause of action to seek a declaration that Crusader owed Cussler $8,571,429 under the contract. In January 2008, the trial court denied both motions.

In February 2008, the trial court dismissed Cussler's first cause of action for declaratory relief as "moot" on the ground Crusader no longer contended it had the option rights to a third novel.

On May 15, 2008, the trial court entered a judgment. The judgment provided that Cussler "shall take nothing" from Crusader. It further provided

---

[3] The contract also provided that Cussler could terminate this option for a second reason. The option could be terminated if Crusader did not commence the principal photography for the second picture within two years of the theatrical release of Sahara—i.e., on or before April 8, 2007. Crusader did not meet this deadline. Thus, on April 8, 2007, while the trial in this action was underway and before question No. 57 was presented to the jury, Cussler could have terminated Crusader's option to purchase rights to a third novel regardless of whether principal photography for the first picture commenced on or before November 6, 2003. Indeed, at closing argument, Crusader conceded that "during the course of this trial" its option rights to the third novel "lapsed." The trial court nonetheless submitted question No. 57 to the jury as an "advisory" question.

that Crusader shall recover $5 million in damages, prejudgment interest and, as "the prevailing party," costs of suit.

### 8. Cussler I

Cussler appealed the May 15, 2008, judgment on numerous grounds. In *Cussler v. Crusader Entertainment, LLC* (Mar. 3, 2010, B208738) (nonpub. opn.) (*Cussler I*), we rejected all of Cussler's arguments but one. We held that Crusader could not prevail on its breach of the implied covenant of good faith and fair dealing cause of action as a matter of law. Accordingly, we reversed the trial court's judgment with respect to the $5 million award to Crusader and the trial court's finding that Crusader was the prevailing party. We otherwise affirmed the judgment and remanded the case so that the trial court could determine whether there was a prevailing party and, if so, whether that party was Cussler or Crusader.

Both Cussler and Crusader filed petitions for review in the California Supreme Court. On June 9, 2010, the California Supreme Court denied both petitions.

### 9. Cussler II *and* Cussler III

While *Cussler I* was pending, Cussler was unable to raise sufficient funds to post a bond to stay enforcement of the judgment. Cussler's task was made more difficult because the amount of the judgment was increased by attorney fee awards.

On April 21, 2009, the trial court entered an order awarding Crusader $13,949,131 in attorney fees (Fee Order). Cussler filed a timely notice of appeal of the Fee Order.

In July 2009, Crusader collected $20,907,200.14 from Cussler. At the time the amount of the judgment was over $21 million, which consisted of $5 million in damages, $13,949,131 in attorney fees, plus interest on those amounts.

On October 22, 2009, the trial court issued an order (Second Fee Order) awarding Crusader $150,000 in attorney fees for its postjudgment enforcement efforts. Cussler appealed the Second Fee Order.

On September 8, 2010, in *Cussler v. Crusader Entertainment, LLC* (Sept. 8, 2010, B215815) (nonpub. opn.) (*Cussler II* and *Cussler III*), we granted Cussler's motion for summary reversal of the Fee Order and Second Fee Order. In our opinion, we stated that both fee orders were void in light of *Cussler I*.

10. *Litigation Regarding Attorney Fees, Restitution and Costs After Cussler I*

After we issued a remittitur in *Cussler I* and while *Cussler II* and *Cussler III* were pending, Crusader and Cussler both filed motions seeking to be declared the "prevailing party" for purposes of attorney fees and costs. Both sides also filed motions seeking recovery of the $5,714,286 Crusader deposited with the superior court.

On December 8, 2010, the trial court issued an order denying both motions for attorney fees on the ground that there was no prevailing party. The order also released the $5,714,286 in funds deposited with the court to Crusader.

With respect to the issue of attorney fees, the order stated: "Here, on balance, neither party has prevailed sufficiently to be deemed the prevailing party nor to justify an award of attorney fees. Neither party obtained its main litigation objective. Cussler sued Crusader for breach of contract and lost on his claims. Crusader sued Cussler for breach of contract and lost on its claims after the Court of Appeal reversed Crusader's favorable jury verdict. Although Cussler prevailed as the cross-defendant on Crusader's cross-complaint, Crusader too prevailed as the defendant on Cussler's complaint. But it cannot be denied that both parties lost on their main litigation objective in seeking affirmative relief on the contract based on each of their theories."

On December 20, 2010, Crusader filed a motion for "clarification" of the December 8, 2010, order. Crusader argued that it was the "mandatory prevailing party" under Code of Civil Procedure section 1032 for purposes of costs, even though the court ruled it was not the prevailing party for purposes of attorney fees under Civil Code section 1717.

On January 14, 2011, Cussler filed a motion for an order of restitution and interest. In this motion, Cussler sought to recover the $20,907,200.14 Crusader collected in July 2009, plus interest at a rate of 10 percent.

On February 8, 2011, the trial court issued an order granting Crusader's motion for clarification and awarding Crusader $514,237.47 in costs. The order also granted Cussler's motion for restitution and interest. The court awarded Cussler the full amount of restitution he sought, less Crusader's cost award and interest on costs, plus 7 percent interest on the restitution award from July 2009 to February 2011, for a total sum of $22,547,857.86.

Cussler and Crusader filed separate timely notices of appeal of the February 8, 2011, order. On June 7, 2011, we consolidated the appeals.

## ISSUES

We shall address three main issues:

1. Did the trial court abuse its discretion by finding that there was no prevailing party for purposes of attorney fees?

2. Did the trial court abuse its discretion by awarding Cussler 7 percent interest on the restitution he recovered from Crusader?

3. Was Crusader a prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4), and entitled to recover costs as a matter of right?

## DISCUSSION

### 1. *The Trial Court Did Not Abuse Its Discretion in Ruling That There Was No Prevailing Party for Purposes of Attorney Fees*

Crusader contends that it is the prevailing party in the litigation and, as a result, is entitled to recover attorney fees pursuant to Civil Code section 1717. This statute pertains to an award of attorney fees in cases involving contract disputes where the contract between the parties "specifically provides" for such fees.[4] (Civ. Code, § 1717, subd. (a).)

"When a contract contains a provision granting either party the right to recover attorney fees in the event of litigation on the contract," Civil Code section 1717 "gives the 'party prevailing on the contract' a right to recover attorney fees, whether or not that party is the party specified in the contract. It defines the phrase 'party prevailing on the contract' as 'the party who recovered a greater relief in the action on the contract,' and it provides that a trial court 'may also determine that there is no party prevailing on the contract for purposes of this section.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 865 [39 Cal.Rptr.2d 824, 891 P.2d 804] (*Hsu*).)

"In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 [85

---

[4] Crusader's argument presumes the contract here has an attorney fees provision. As we explain in *Cussler v. Crusader Entertainment, LLC* (Dec. 21, 2012, B238364) (nonpub. opn.), however, this presumption is incorrect. Because neither party in this appeal raised the issue of whether the contract has an attorney fees provision, we do not address it in this opinion. In any case, even assuming the contract contains an attorney fees provision, we reject Crusader's argument that the trial court abused its discretion in determining there was no prevailing party for purposes of attorney fees.

Cal.Rptr.3d 532] (*Kachlon*).) California courts liberally interpret the term "on the contract" as used in Civil Code section 1717. (See *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 [76 Cal.Rptr.3d 325] (*Blickman*).) A declaratory relief cause of action seeking interpretation of a contract is "on the contract" within the meaning of the statute. (See *Kachlon*, at p. 348.) An action for fraud, however, " 'sounds in tort, and is not "on a contract" for purposes of an attorney fee award, even though the underlying transaction in which the fraud occurred involved a contract containing an attorney fee clause.' " (*Loube v. Loube* (1998) 64 Cal.App.4th 421, 430 [74 Cal.Rptr.2d 906].)

In determining whether there is a prevailing party on the contract, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu, supra,* 9 Cal.4th at p. 876.)

The trial court exercises wide discretion in determining who, if anyone, is the prevailing party for purposes of attorney fees. (*Blickman, supra,* 162 Cal.App.4th at p. 894.) We thus review the trial court's ruling that there was no prevailing party for an abuse of discretion. Such an abuse occurs only when the trial court acts in an " ' " 'arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 615–616 [115 Cal.Rptr.3d 762].)

██ Here, in their pleadings, at trial and on appeal, both Cussler and Crusader sought to recover millions of dollars from each other on their contract claims. Crusader's contract claims consisted of causes of action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. But after years of litigation both sides recovered nothing—not one dime of damages and no declaratory relief. The trial court therefore acted well within its discretion when it ruled that neither side was the prevailing party.

Crusader argues that the trial court failed to recognize that Crusader "won the entitlement" to the $8.5 million Cussler alleged was due under the contract. We disagree. Crusader never sought to recover $8.5 million in damages from Cussler as a result of a breach of the contract. Rather, it sought to prevent Cussler from recovering $8.5 million in damages. Thus, Crusader was successful on its *defense* against an $8.5 million claim. But the same is true with respect to Cussler's defense against Crusader's numerous breach of contract claims. In the end, neither party obtained any *affirmative* relief.

It is also worth noting that Crusader did not produce a second film as a result of Cussler's alleged uncooperative conduct. Crusader contends that Cussler's misconduct has made the production of a second film untenable. Crusader thus paid about $11.5 million for literary rights it used in one film when the contract contemplated Crusader would pay $20 million for literary rights it would use for two films, or $10 million per picture. Despite its vigorous efforts in court, Crusader never recovered the roughly $1.5 million it allegedly overpaid for the one film it did produce.

Crusader contends that the trial court failed to apply the correct legal standard regarding whether the parties obtained their "litigation objectives," which Crusader calls the "second prong" of the test set forth in *Hsu*. The sole basis for this argument is that in its minute order the trial court did not expressly state that it determined the parties' litigation objectives by looking at the "pleadings, trial briefs, opening statements, and similar sources" as *Hsu* directs. (*Hsu, supra*, 9 Cal.4th at p. 876.) From this omission, Crusader *presumes* that the trial court did not analyze the parties' pleadings, trial briefs, opening statements and similar sources.

This presumption turns appellate review on its head. " ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." ' " (*Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787 [126 Cal.Rptr.3d 763].)

Nothing in the record in this case indicates that the trial court did not consider the pleadings, trial briefs, opening statements and similar sources in determining whether the parties achieved their litigation objectives. We thus presume that the trial court did consider such sources in a manner consistent with *Hsu*. Accordingly, Crusader did not meet its burden of showing error.

The principal two cases Crusader relies upon are *Hsu* and *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287 [123 Cal.Rptr.3d 453] (*de la Cuesta*). Both cases are distinguishable from the present case.

In *Hsu*, the plaintiffs sued the defendants for specific performance of a real estate purchase contract. (*Hsu, supra*, 9 Cal.4th at p. 867.) Although the trial court entered judgment against the plaintiffs on their breach of contract claim on the ground that the parties did not form a contract, it declined to award the defendants attorney fees. (*Id.* at p. 869.) The California Supreme Court, however, found this ruling erroneous. It held that "[w]hen a defendant obtains a simple, unqualified victory by defeating the only contract claim in the

action, section 1717 entitles the successful defendant to recover reasonable attorney fees incurred in defense of that claim if the contract contained a provision for attorney fees." (*Hsu*, at p. 877.) In this case, by contrast, Crusader did not obtain a simple, unqualified victory. It lost on all of its contract claims just as Cussler lost on all of his claims. The result therefore was a "tie," not a "victory" for Crusader.

■ Crusader argues that it was necessarily the prevailing party because its claims in its cross-complaint were "defensive" in nature. In *Hsu*, the court recognized that " '[t]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails . . . .' " (*Hsu, supra*, 9 Cal.4th at p. 875.) The court also stated in a footnote: "When there are cross-actions on a contract containing an attorney fees provision, and no relief is awarded in either action, a trial court is not *obligated* to find that there is no party prevailing on the contract for purposes of section 1717. If the court concludes that the defendant's cross-action against the plaintiff was essentially defensive in nature, it *may* properly find the defendant to be the party prevailing on the contract." (*Hsu*, at p. 875, fn. 10, italics added.) By stating that the trial court is not "obligated" to find no prevailing party, and that it "may" find otherwise, the California Supreme Court indicated in dicta that the trial court has discretion to award attorney fees where a defendant/cross-complainant merely filed a "defensive" cross-complaint.

By finding there was no prevailing party for purposes of attorney fees, the trial court impliedly rejected Crusader's argument that its cross-complaint was essentially defensive in nature. This ruling was not arbitrary, capricious or patently absurd. There is evidence in the record that before Cussler filed his complaint, Crusader hired litigation counsel and accused Cussler of breaching the contract. Merely because Cussler filed his complaint before Crusader filed its cross-complaint does not make Crusader's claims "defensive." In its cross-complaint, Crusader alleged that "[a]lthough adventure novelist Clive Cussler started this litigation, in reality [Crusader] is the injured party." Crusader made similar arguments at trial. Indeed, Crusader did not simply argue that Cussler's alleged damages should be set off or reduced. Crusader sought millions of dollars of damages against Cussler. When viewed in the context of the pleadings and arguments at trial, the trial court acted well within its discretion in rejecting Crusader's argument that its cross-complaint was essentially defensive.[5]

---

[5] Crusader argues that its cross-complaint is essentially defensive because its causes of action allegedly "tracked" a number of its affirmative defenses. Crusader cites no legal authority to support this analysis. Moreover, in many, if not most, contract dispute cases involving cross-complaints, the same set of facts supports both affirmative defenses and causes of action in a cross-complaint. This does not necessarily transform a cross-complaint into an "essentially defensive" pleading.

Crusader's reliance on *de la Cuesta* is also misplaced. In *de la Cuesta*, a landlord sued a tenant for unpaid rent and recovered 70 percent of what he · claimed was owing. (*de la Cuesta, supra,* 193 Cal.App.4th at p. 1290.) The court held that because the result was so "lopsided" in favor of the landlord, the trial court abused its discretion by not awarding the landlord attorney fees. (*Ibid.*) The same is not true here. Crusader did not recover 70 percent of the damages it sought. It recovered 0 percent. This case is thus easily distinguishable from *de la Cuesta.*

### 2. *The Trial Court Did Not Abuse Its Discretion by Awarding Cussler Seven Percent Interest on Its Restitution*

■ Where, as here, one party collects money by executing on a judgment that is later overturned on appeal, the other party may seek restitution of the collected funds upon remand. (Code Civ. Proc., § 908; Rest., Restitution, § 74.) The court may, in its discretion, award interest on the amount of restitution. (*Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1085 [13 Cal.Rptr.3d 586].) In general, interest is awarded unless it would be inequitable under the circumstances. (*Ibid.*; *Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1066 [126 Cal.Rptr.3d 880] (*Gunderson*); *PSM Holding Corp. v. National Farm Financial Corp.* (C.D.Cal. 2010) 743 F.Supp.2d 1136, 1154–1155.)

In this case, Crusader concedes that the trial court appropriately ordered it to pay Cussler restitution and that the trial court acted within its discretion in awarding Cussler interest on the restitution. But Crusader argues that the trial court abused its discretion by awarding an interest rate of 7 percent, which it contends is excessive. According to Crusader, the court should have awarded an interest rate of no more than 1.4 percent. It derived this maximum rate by averaging the rate of interest the superior court paid on deposits with the court from June 2009 to September 2010.

Crusader provides no factual or legal basis for using an interest rate of 1.4 percent. The average interest rate of court deposits is irrelevant because Crusader did not actually deposit the $20 million it collected from Cussler in court and provided no evidence of what it actually did with the money. The record thus does not indicate the actual interest or rate of return Crusader earned on Cussler's funds.

■ In the absence of evidence regarding Crusader's actual use of Cussler's funds, the trial court used an interest rate of 7 percent, which the court described as the "constitutional rate." This was not an arbitrary, capricious or patently absurd decision. "Absent a statutory provision specifically governing the type of claim at issue, the *prejudgment* interest rate is 7 percent under

article XV, section 1 of the California Constitution." (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 573 [131 Cal.Rptr.3d 382], italics added.) The statutory *postjudgment* interest rate is 10 percent. (Code Civ. Proc., § 685.010.) We need not decide whether the interest awarded here was prejudgment or postjudgment because the trial court awarded the lower rate, which is to appellant Crusader's benefit.

Crusader argues that Cussler received a "windfall" because the 7 percent interest rate is far greater than a "reasonable market rate." There are, however, countless "markets," ranging from treasury bills to far riskier investments. The trial court thus had no way of determining which "market" to examine, much less whether the rate was "reasonable."

Moreover, the parties would have faced the same discrepancy between the market rate and the statutory or constitutional rate of interest had either of them recovered damages. For example, if in *Cussler I* we had affirmed the initial judgment awarding Crusader $5 million in damages, Crusader would have recovered postjudgment interest at a rate well above what Crusader considers the reasonable market rate. Yet Crusader argues that applying a lower prejudgment interest rate to Cussler's restitution is unjust. We reject this argument. When Crusader collected $20 million pending an appeal, it assumed "the risk that it may have to repay the award, along with interest," if Cussler prevailed on the appeal. (*Gunderson, supra,* 196 Cal.App.4th at pp. 1066–1067.)

██ Crusader argues that interest on restitution should be treated differently than interest on damages. Interest serves the same purpose in either case, however, namely to compensate a party entitled to recover a liquidated sum of money for the time value of money. Other courts which have examined this issue have come to the same conclusion. (*Stockman Bank of Montana v. AGSCO, Inc.* (2008) 2008 ND 74 [747 N.W.2d 516, 518] [awarding statutory prejudgment interest rate on restitution]; *Cheyenne Resources v. Elk Horn Coal Corp.* (Ky. 2008) 265 S.W.3d 184, 186–188 [awarding statutory prejudgment and postjudgment interest rates on restitution].)

We hold that the trial court did not abuse its discretion by awarding Cussler 7 percent interest on the restitution he recovered.

### 3. Crusader Was a Prevailing Party Under Code of Civil Procedure Section 1032, Subdivision (a)(4), Entitled to Recover Costs as a Matter of Right

Cussler argues the trial court abused its discretion by awarding Crusader costs of suit, excluding attorney fees. We reject this argument.

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) For purposes of costs, Code of Civil Procedure section 1032, subdivision (a)(4) defines a "prevailing party" to include "[(1)] the party with a net monetary recovery, [(2)] a defendant in whose favor a dismissal is entered, [(3)] *a defendant where neither plaintiff nor defendant obtains any relief,* and [(4)] a defendant as against those plaintiffs who do not recover any relief against that defendant."[6] (Italics added.) The trial court concluded that Crusader was a "defendant" within the meaning of the third category specified by the statute. We agree.

The *McLarand* court addressed the same issue. Following a jury trial, the plaintiff was denied all relief on its complaint and the defendant was denied all relief on its cross-complaint. The Court of Appeal affirmed the trial court's decision to award costs to the defendant as the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4).[7] (*McLarand, supra*, 231 Cal.App.3d at p. 1452.) Under *McLarand*, Crusader is the prevailing party for purposes of costs. (Accord, *Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1026–1027 [64 Cal.Rptr.2d 353] [citing *McLarand* with approval].)

 Cussler argues that the trial court had discretion to deny Crusader costs even though Crusader is a "defendant where neither plaintiff nor defendant obtains any relief" within the meaning of Code of Civil Procedure section 1032, subdivision (a)(4). Cussler is wrong. The statute provides the

---

[6] A prevailing party for purposes of costs under Code of Civil Procedure section 1032 is not necessarily a prevailing party for an award of attorney fees under Civil Code section 1717. (*McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 [282 Cal.Rptr. 828] (*McLarand*).)

[7] The current version of Code of Civil Procedure section 1032 was enacted in 1986. (Stats. 1986, ch. 377, § 6, p. 1578.) The statute codified earlier case law based on Code of Civil Procedure former section 1032. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 654 (1985–1986 Reg. Sess.) as amended July 8, 1986, p. 3; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 93, p. 631.) Earlier case law provided that where, as here, the plaintiff recovers nothing on its complaint and the defendant recovers nothing on its cross-complaint, the defendant is the prevailing party for purposes of costs. (*Schrader v. Neville* (1949) 34 Cal.2d 112, 115 [207 P.2d 1057]; *Gerstein v. Smirl* (1945) 70 Cal.App.2d 238, 240 [160 P.2d 585] (*Gerstein*).) The reasoning for this rule was stated in *Gerstein*: "Had defendant been let alone she might never have appealed to the courts for redress. However, when plaintiff chose to commence legal action, defendant was required to set up her counterclaims for any damages allegedly sustained by her arising out of the transaction set forth in plaintiff's complaint or be foreclosed from thereafter maintaining an action against the plaintiff therefor [citations]." (*Gerstein*, at p. 240.)

court with discretion to determine the prevailing party under two circumstances: (1) when any party "recovers other than monetary relief" and (2) "in situations other than as specified." (Code Civ. Proc., § 1032, subd. (a)(4).) Here, Cussler did not recover nonmonetary relief and this situation was in fact one of those "specified" by the Code of Civil Procedure section 1032, subdivision (a)(4). Crusader therefore was entitled to recover costs as a matter of right. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1333 [104 Cal.Rptr.3d 219, 223 P.3d 77].)

Cussler's reliance on *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136 [70 Cal.Rptr.2d 769] (*Sears*) and *Roden v. AmerisourceBergen Corp.* (2007) 155 Cal.App.4th 1548 [67 Cal.Rptr.3d 26] (*Roden*) is misplaced. Contrary to Cussler's assertion, *Roden*, which relies on *Sears* (*Roden*, at p. 1580), and *Sears* itself do not conflict with *McLarand*. Indeed, *Sears* cited *McLarand* with approval regarding an award of attorney fees. (*Sears*, at p. 1157.) Nothing in *Sears* or *Roden* states that the trial court has discretion to deny costs under the circumstances presented here.

Cussler contends that the trial court had discretion to deny Crusader costs because he obtained nonmonetary relief. As explained *ante*, Cussler sought a declaratory judgment stating that Crusader did not have the option to make a third film based on a third Cussler novel. Although Crusader expressed no interest in making a second film, for whatever reason Crusader disputed this claim when the trial started. The parties disputed whether principal photography of the film Sahara commenced on or before November 6, 2003. If it did, under the terms of the contract, Crusader retained the option. If it did not, Crusader lost the option.

This controversy, however, became moot because in the middle of the trial Crusader's option lapsed for a reason wholly independent of whether principal photography for Sahara commenced on or before November 6, 2003. (See fn. 3, *ante*.) After Crusader conceded in open court the option lapsed, the trial court dismissed Cussler's declaratory relief cause of action as moot.

Cussler contends that it obtained its litigation objective—the termination of Crusader's option rights to a third novel—through "legal process" and thus obtained nonmonetary relief. This argument ignores the independent reason Crusader conceded the issue. Cussler did not obtain nonmonetary relief for purposes of determining the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4).

## DISPOSITION

The order dated February 8, 2011, is affirmed. The parties shall bear their own costs on appeal.

Croskey, Acting P. J., and Aldrich, J., concurred.

On January 9, 2013, the opinion was modified to read as printed above.