Filed 7/28/14  Fed. Nat. Mortgage Assn. v. Rothman CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Plaintiff and Appellant, | G048156 |
| v. | (Super. Ct. No. 30-2010-00435329) |
| LARRY ROTHMAN et al., | O P I N I O N |
| Defendants and Appellants; | |
| BROOKHURST VILLAGE HOMEOWNERS ASSOCIATION et al., | |
| Defendants and Respondents. | |

Appeals from a judgment and orders of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Wright, Finlay & Zak, T. Robert Finlay, Michael J. Gilligan and Brian P. Stewart for Plaintiff and Appellant.

The Durst Firm, The Justice Law Center, Lee H. Durst; Larry Rothman & Associates and Larry Rothman for Defendants and Appellants.

Hatton, Petrie & Stackler, Arthur R. Petrie, II and John A. McMahon for Defendants and Respondents.

\* \* \*

Federal National Mortgage Association (Fannie Mae) brought 11 lawsuits in Orange, Riverside, San Bernardino, and Los Angeles Counties against Larry Rothman and a number of homeowners associations. The complaints alleged the respective homeowners associations placed liens on condominiums owned by Fannie Mae, the amount of the liens included fees incurred by the previous owners of the condominiums, and Fannie Mae was required to pay off the liens to pass clear title, despite the fact Fannie Mae was liable only for fees incurred during the period it owned the properties. Rothman, an attorney for the homeowners associations, was alleged to have recorded the notices of delinquent assessment when the previous owners failed to pay their homeowners associations' fees. It was also alleged Rothman acted with fraud, malice, and bad faith in filing notices of delinquent assessment against the properties when Fannie Mae failed to pay its homeowners associations' fees. It was further alleged Rothman subsequently demanded Fannie Mae pay funds to release the homeowners associations' liens, and received sums from Fannie Mae for the benefit of the homeowners associations, knowing Fannie Mae would have to pay the demanded amounts in order to close escrow on the condominiums it was selling.

Fannie Mae subsequently filed a motion to have all the cases transferred to Orange County Superior Court Judge Derek W. Hunt's court "for coordination and consolidation." All parties agreed to the transfer. Judge Hunt ordered the 11 cases consolidated under one case number and ordered all parties to file all documents under

2

case No. 30-2010-00435329. All the actions were tried together on a stipulated set of facts and exhibits. The court issued one judgment, finding in favor of Fannie Mae in four of the matters and that Fannie Mae did not carry its burden of proof in the other seven matters, i.e., the court found in favor of Rothman and the homeowners associations in the seven remaining matters.

Rothman subsequently filed a memorandum of costs and a separate motion for attorney fees in each matter where judgment was entered against Fannie Mae. Fannie Mae filed a motion to tax costs. The court denied Rothman's motion for attorney fees and denied costs, stating there was no prevailing party in the consolidated action. Rothman appeals from the orders denying attorney fees and costs. Fannie Mae appeals from that portion of the judgment wherein the court found in favor of the homeowners associations and Rothman. We affirm.

I

PROCEDURAL HISTORY AND FACTS

This matter involves 11 lawsuits brought by Fannie Mae in four different counties (Orange, Los Angeles, Riverside, and San Bernardino) against Rothman and various homeowners associations. Rothman was named as a defendant in all 11 cases. Brookhurst Village Homeowners Association (Brookhurst) and Lakes at Corona Homeowners Association (Lakes at Corona) were named as defendants in three cases. Bishop Villas Homeowners Association (Bishop), Creekside Village Homeowners Association (Creekside), Val Vista Obispo Homeowners Association (Val Vista), Val Villas Homeowners Association (Val Villas), and Club View Villas Homeowners Association (Club View) were each named as a defendant in one case.

The causes of action against the homeowners associations included money had and received, breach of applicable covenants, conditions, and restrictions (CC&Rs), breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and violation of Civil Code former sections 1367.1 and 1368. The actions against Rothman

3

included money had and received, and violation of the same Civil Code sections. The matters were consolidated and tried together in Orange County on stipulated facts and exhibits. Generally, the stipulation established each homeowners association was entitled to collect assessments on the condominiums in the association; an individual borrowed money to buy a condominium within the association, secured the loan with a first deed of trust on the condominium, failed to pay the homeowners association assessed fees, and defaulted on the deed of trust; assessments were past due and owing at the time the trustee foreclosed on the first deed of trust and Fannie Mae acquired the property; Fannie Mae has a policy and practice of refusing to pay homeowners association fees on property it owns until such time as it resells the property; Rothman and the homeowners associations recorded notices of default under the terms of the homeowners associations' CC&Rs, and sent Fannie Mae letters setting forth the monthly dues, applicable late fees, and the balance of fees due on the condominium; and Fannie Mae paid the amount demanded by Rothman. On occasion, the payment was made "under protest." In a number of cases, Rothman also wrote a letter to the escrow company handling Fannie Mae's sale of the condominium, seeking payment of assessment fees from escrow. In each of the 11 actions, the liens on the related properties were released once Fannie Mae paid the claimed assessments, fees, and penalties.[1] The goal of the lawsuits was to force Rothman and the homeowners to disgorge what Fannie Mae considered inflated and unlawfully obtained assessments.

The court subsequently entered judgment in favor of Fannie Mae and against Rothman and Brookhurst in two of the matters, against Rothman and Club View in one matter and against Rothman and Val Vista in another matter. In each of the remaining seven matters, the court ruled Fannie Mae should take nothing by its complaint and entered judgment in favor of Rothman and the homeowners associations.

_____

[1] Further facts, such as the amounts claimed to be owed Rothman and the homeowners association, are set forth in the discussion below, where relevant.

4

II

DISCUSSION

A. *Fannie Mae's Appeal*

1. *Timeliness*

Fannie Mae's appeal from the court's judgment entered on October 12, 2012, was filed on March 21, 2013. Rothman argues Fannie Mae's appeal is untimely. According to Rothman, Fannie Mae was required to file its notice of appeal within 60 days of the clerk mailing the notice of entry of judgment on October 10, 2012. The record does not support Rothman's contention. On October 12, 2012, the clerk of the court served a copy of the court's minute order from the same date, not a notice of entry of judgment. California Rules of Court, rule 8.104(a)(1)(A) requires an appellant to file a notice of appeal no later than 60 days after the clerk of the court serves the party with "a document entitled 'Notice of Entry' of judgment or a file stamped copy of the judgment."

The minute order met neither of these requirements. It merely stated the court reviewed two different judgments—one consisted of "11 different single judgments," the other was one combined judgment for all 11 cases—and the court approved and signed the combined judgment. There is no indication the judgment was served on the parties at the same time the minute order was served. The clerk's proof of service states a copy of the minute order was served. Consequently, there is no evidence Fannie Mae was served with notice of entry of judgment or a copy of the judgment on October 12, 2012. Fannie Mae was therefore entitled to file its notice of appeal within 180 days from the date the court entered judgment. (Cal. Rules of Court, rule 8.104(a)(1)(C).) The March 21, 2013 notice of appeal was timely filed.

2. *Standard of Review*

The trial court did not find in favor of Rothman and the homeowners associations in seven matters because the court found Fannie Mae was responsible for fees incurred prior to Fannie Mae's purchase of the properties. Rather, the court found in

5

favor of Rothman and the homeowners associations in these seven matters because the court implicitly found Fannie Mae did not meet its burden of proof. The court's minute order setting forth the reasons for its decision states: "Unlike the four properties [in which Fannie Mae prevailed], all of the others show HOA liens from periods before and after the Fannie Mae foreclosure. Possibly the pre-foreclosure amounts were included in the post-foreclosure calculations: the court has already noted that with each new lien the claimed amount became larger. Of course this observation is not proof, except of the most inferential kind. Pre-trial interrogatories could easily have been used to establish the facts—and under oath." (Italics omitted.)[2]

"When the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals, it is somewhat misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This is because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case. [Citations.] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279.)

3. *The Merits of Fannie Mae's Appeal*

Fannie Mae maintains the assessment liens put in place by Rothman and the demand statements he sent to Fannie Mae included fees and costs imposed *prior* to

---

[2] At a subsequent hearing, the court reiterated it had reached its decision because it found the evidence "to be incomplete."

Fannie Mae's ownership of the condominiums and are not authorized by the CC&Rs, which state an owner is only liable for reasonable fees incurred during ownership, not for fees incurred by a previous owner. Additionally, Fannie Mae argues fees charged over and above the monthly fees and late charges were unreasonable. Fannie Mae claims it received notice it owed between $2,500 and $5,000 in legal fees to Rothman shortly after it took title to the condominiums. From this it argues there was no basis for such charges, although it concedes "the dubious nature of these charges may not have been exposed as thoroughly as possible."

The seven instances in which the court found in favor of the homeowners association and Rothman involve Bishop unit 101, Brookhurst unit 1015, Val Villas unit 4, Lakes at Corona units B, C, and H, and Creekside unit 306.

a. *Bishop Unit 101*

The previous owner of unit 101 defaulted on his deed of trust and Fannie Mae acquired the property on May 20, 2009, at the foreclosure sale under the deed of trust. By that time, the previous owner owed Bishop $4,130 in monthly assessments, late charges, and a special assessment. Rothman had filed a lien against unit 101 prior to the foreclosure sale.

On June 24, 2009, just over a month after Fannie Mae acquired title to unit 101, Rothman filed another lien on unit 101 in the amount of $12,770. Bishop's log sheet had a July 10, 2009 entry reflecting an assessment balance of $3,775 through August 10, 2009. It also reflected various other fees which, when added to the assessment balance, totaled $12,770. In July 2009, Bishop sent Fannie Mae a letter stating the monthly homeowners association dues were $200 a month and there was a $15 fee for late payments.

In September 2009, Rothman sent a letter to the agency handling the escrow for Fannie Mae's sale of unit 101 demanding $16,135 for accrued fees and costs. The letter stated the check should be made out to Rothman. Fannie Mae paid Rothman

7

the demanded amount. The itemized accounting accompanying Rothman's demand showed that of the $16,135 Rothman claimed was due and owning, $4,990 was a previous balance covering January 2008 through September 2009.

### b. *Brookhurst Unit 1015*

The previous owner of unit 1015 owed Brookhurst $4,419 in delinquent assessments through September 24, 2009. He also defaulted on his trust deed and Fannie Mae purchased unit 1015 at the foreclosure sale on October 14, 2009. On December 1, 2009, Rothman signed a notice of delinquent assessment in the amount of $9,721 against the unit now owned by Fannie Mae. On January 29, 2010, Rothman and Brookhurst sent Fannie Mae a demand claiming assessments of $10,500 were owed through February 10, 2010, and on April 30, 2010, Fannie Mae paid under protest the $12,565 Rothman claimed was due.

### c. *Val Villas Unit 4*

The previous owner of unit 4 secured her purchase of the unit with a first deed of trust on the property. On June 25, 2009, Val Villas filed a notice of delinquent assessment, claiming she owed assessments and late fees in the amount of $4,253. The owner defaulted on her trust deed and Fannie Mae purchased the unit on July 23, 2009, at the foreclosure sale. On September 4, 2009, another notice of delinquent assessment was recorded. This time the lien was in the amount of $9,047 and included late fees. Rothman subsequently recorded a notice of default for failure to comply with the applicable CC&Rs and faxed a letter to Fannie Mae's agent stating the balance on Fannie Mae's account was $13,863 through May 22, 2010. In August 2010, Rothman sent Fannie Mae a letter stating a notice of trustee's sale was recorded against the property and the balance on the account for unit 4 was now $12,163. Fannie Mae paid Rothman the $12,163 under protest.

d. *Lakes at Corona Unit B*

In January 2007, the previous owners of unit B secured their purchase of the unit with a first deed of trust. At the end of October 2008, a notice of delinquent assessment was filed because the owners owed Lakes at Corona $2,927.35 in fees through November 2008. Fannie Mae purchased the property on September 17, 2009, when the trustee of the first deed of trust unit B sold the unit at a foreclosure sale. In December 2009, Lakes at Corona filed another notice of delinquent assessment alleging Fannie Mae owed $10,999.30 in assessments. Ten days later, Rothman sent Fannie Mae a letter setting forth the monthly dues and stating it owed Lakes at Corona $11,548.78 through January 5, 2010. In March 2010, Fannie Mae paid Rothman under protest $13,061.30, the full amount demanded.

e. *Lakes at Corona Unit C*

The previous owners of unit C secured their purchase of the property with a first deed of trust. After the owners failed to pay assessments on unit C in October 2008, a notice of delinquent assessment was filed. Lakes at Corona alleged the owners owed $3,433.04 in fees through November 25, 2008. The owners defaulted on their first deed of trust and Fannie Mae purchased the property at the foreclosure sale on August 19, 2009. In October 2009, Rothman filed another notice of delinquent assessment and alleged Fannie Mae owed $10,780.63 in assessments and fees through October 29, 2009. By November 3, 2009, Lakes at Corona and Rothman contended Fannie Mae owed $11,949.32. On December 17, 2009, Fannie Mae paid Rothman the latest claimed amount of $12,978.01 under protest.

f. *Lakes at Corona Unit H*

The previous owners of unit H secured their purchase of the property with a first deed of trust. The owners failed to pay assessments due to Lakes at Corona in July 2008, and the homeowners association served a notice of delinquent assessment, alleging the owners owed Lakes at Corona $2,570.92 for fees through July 24, 2008. A second

9

notice of delinquent assessment was recorded in August 2008, alleging the owners owed $1,641.70 in fees through March 31, 2009. The former owners defaulted on the first deed of trust and Fannie Mae purchased unit H on December 18, 2009, at the foreclosure sale. Two months later, Rothman recorded another notice of delinquent assessment alleging Fannie Mae owed $4,845 in fees through February 28, 2010. In April 2010, Fannie Mae paid Rothman $11,448.29 under protest.

g. *Creekside Unit 306*

The previous owners of unit 306 secured their purchase of the unit with a first deed of trust. Rothman served a notice of delinquent assessment after the owners failed to pay Creekside's assessment in July 2009. The notice alleged the owners owed $4,076.60 in fees through August 2009. The owners defaulted on the first deed of trust and Fannie Mae purchased unit 306 at the foreclosure sale on June 2, 2010. In August 2010, Rothman recorded a notice of trustee's sale under Creekside's CC&Rs. The next month, Rothman faxed a demand letter to Fannie Mae claiming the balance owed was $7,399.23 through September 13, 2010. On September 16, 2010, Fannie Mae paid Rothman the claimed amount under protest.

h. *Common Facts*

The trustees that foreclosed on the various condominium units Fannie Mae purchased did not notify Rothman or the respective homeowners association of the foreclosures. Fannie Mae has a policy and practice of refusing to pay assessment fees to the responsible homeowners association until such time as it resells the condominium. Once Fannie Mae paid the above fees to Rothman, the liens placed on those properties were released.

i. *Analysis*

Fannie May contends the trial court erred in finding in favor of Rothman and the homeowners associations in the above matters because the evidence established Fannie Mae was required by Rothman and the homeowners associations to pay

10

assessments incurred by prior owners of the condominium units, and it was not liable for assessments incurred by prior owners. The trial court accepted the stipulated facts and denied Fannie Mae relief in each of these seven matters.

The trial court noted liens placed on properties by homeowners associations for failure to pay assessments are senior only to *subsequent* recorded liens, citing Civil Code former sections 1367, subdivision (d) and 1367.1, subdivision (f). In other words, the liens were not senior to the first deeds of trusts in these matters. The Civil Code sections relied on by the court and the parties were repealed as of January 1, 2014. (Stats. 2012, ch. 180, § 1, operative Jan. 1, 2014.)[3] At the time of the trial, former section 1367, subdivision (b) of the Civil Code permitted a homeowners association to obtain a lien against a condominium subject to assessments by the homeowners association for unpaid assessments, "plus any costs of collection, late charges, and interest." (Civ. Code, former § 1367, subd. (b); Stats. 2002, ch. 1111, § 7.) "A lien created pursuant to subdivision (b) shall be prior to all other liens recorded subsequent to the notice of assessment, except that the declaration may provide for the subordination thereof to any other liens and encumbrances." (Civ. Code, former § 1367, subd. (d); Stats. 2002, ch. 1111, § 7; cf. Civ. Code, former § 1367.1, subd. (f); Stats. 2006, ch. 575, § 2.) Here, the trustees of the first deeds of trust on the condominium units foreclosed on their superior liens. Thus, the court held Fannie Mae was responsible only for post-foreclosure liens. In awarding judgment to Fannie Mae in the four cases not before us, the superior court found the homeowners associations' liens were "wiped out" when Fannie Mae purchased the properties after the homeowners associations' liens had been recorded.

---

[3] These statutes were part of the Davis-Sterling Common Interest Development Act. (Civ. Code, former § 1350; Stats. 1985, ch. 874, § 14, repealed by Stats. 2012, ch. 180, § 1, operative Jan 1, 2014.) This act is now found in Civil Code section 4000 et seq.

11

The court noted a difference in the seven matters on appeal in that in each case there were pre- and post-Fannie Mae delinquencies. The court found for Rothman and the homeowners association in each of these matters because it could not conclude the assessments and fees were incurred prior to Fannie Mae's ownership of the condominium. Again, even Fannie Mae concedes the "nature of these charges may not have been exposed as thoroughly as possible." But it was Fannie Mae's burden.

As the plaintiff in these matters, Fannie Mae had the "burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief." (Evid. Code, § 500.) Thus, in order to prevail on its claim that Rothman and the homeowners associations forced it to pay fees incurred prior to its purchase of the condominiums, Fannie Mae had to prove by a preponderance of the evidence (*Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1486) the fees it paid included amounts not incurred during its ownership of the condominiums. The trial court's judgment in favor of Rothman and the homeowners associations in these seven matters was the result of what it saw as a failure of proof.

It appears the lion's share of the amounts claimed by Rothman and the homeowners associations were for costs incurred in attempting to collect the delinquent fees. For example, in connection with Bishop unit 101, the alleged delinquent assessment was $3,775 and the remaining $8,795 was claimed as costs. Civil Code former section 1367.1, subd. (a) authorized homeowners associations to charge "reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any" over and above delinquent assessments and late fees. (States. 2006, ch 575, § 2.)

To the extent Fannie Mae contends Rothman and the homeowners associations overcharged it in each of these seven matters, it failed to establish the amount previously owed by the prior owner was included in the claims made against it. This could have been accomplished by submitting interrogatories to Rothman and the homeowners associations, demanding to know how Rothman and the homeowners

12

associations calculated each figure and on what date(s) the various fees and costs were incurred, as the trial court noted. The stipulated facts upon which the trial was conducted were incomplete.

Applying the standard of review in matters such as this, and keeping in mind the judgment "is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133), we cannot say the incomplete facts were "'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Shaw v. County of Santa Cruz*, *supra*, 170 Cal.App.4th at p. 279.) In other words, the state of the evidence was not such that Fannie Mae was entitled to judgment in its favor as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571.) Accordingly, we affirm the court's challenged judgment in favor of Rothman and the homeowners associations.

B. *Rothman's Appeal*

Rothman's notice of appeal states that *he* appeals from the court's orders on January 8, 2013 (the order taxing costs), and January 17, 2013 (the order denying attorney fees). Fannie Mae's motion to tax costs and Rothman's motion for attorney fees pertained only to the seven cases in which the court entered judgment in favor of Rothman and the homeowners associations. The attachment to the notice of appeal stated "Larry Rothman is appealing all of these cases" and the notice of appeal "does not include" Brookhurst or Creekside. (Capitalization omitted.)

An order taxing costs may be appealed as an appealable order after judgment. (*Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 92.) We review the trial court's order taxing costs for an abuse of discretion (*Van de Kamp v. Gumbiner* (1990) 221 Cal.App.3d 1260, 1291) because whether a claimed expense was reasonably necessary to the litigation is a question of fact to be decided by

13

the trial court (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774).

Code of Civil Procedure[4] section 1033.5 sets forth those items allowable as costs under section 1032.  (§ 1033.5, subd. (a).)  Subdivision (b) of section 1033.5 lists items not allowable as costs.  The court denied costs to Rothman and the homeowners associations that had judgment entered in their favor.  Rothman contends the court erred.  He claims the homeowners associations that had judgment entered in their favor are entitled as a matter of right to recover their costs.  "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  (§ 1032, subd. (b).)

In denying costs, the court stated it was exercising its discretion.  (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1331-1332 [trial court has discretion under section 1032, subdivision (a)(4) to determine whether a party prevailed at trial].)  "'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."  (§ 1032, subd. (a)(4).)  The court found no prevailing parties as the outcome of the case resulted in  "partial wins and partial losses between each side."

Rothman contends the court erred because although the matters had been consolidated, they remained separate cases and he and each of the homeowners associations that had judgment entered in their favor prevailed on those cases and are

---

4  All undesignated statutory references are to the Code of Civil Procedure.

14

entitled to costs as a matter of right. He argues the court consolidated the 11 cases for trial only and the cases otherwise remained separate.

"[S]ection 1048, subdivision (a), authorizes the trial court, when appropriate, to 'order a joint hearing or trial' or to 'order all the actions consolidated.' Under the statute and the case law, there are thus two types of consolidation: a consolidation for purposes of trial only, where the two actions remain otherwise separate; and a complete consolidation or consolidation for all purposes, where the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment. [Citations.]" (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147.) The consolidation that occurred in the present case was a complete consolidation for all purposes. The court consolidated all the cases into case No. 30-2010-00435329, and ordered the parties to file all documents under that case number. The parties submitted the trial on one set of stipulated facts and exhibits. After trial, the court was provided with 11 separate proposed judgments, one as to each matter, and with one judgment disposing of all 11 claims. The court chose the single judgment filed under the assigned case number.

Because the matters were consolidated for all purposes, the court was in a position to decide whether one side or the other prevailed, or whether there was no prevailing party. It found no prevailing party. The court's conclusion was not an abuse of discretion. Although Fannie Mae claimed it paid more than $100,000 in the combined cases and had been overcharged, it received a substantial judgment in its favor of more than $53,000. We therefore reject Rothman's contention that the court erred in denying costs.

For the same reason we reject Rothman's contention that the court erred in denying him attorney fees. "The trial court exercises wide discretion in determining who, if anyone, is the prevailing party for purposes of attorney fees. [Citation.] We thus review the trial court's ruling that there was no prevailing party for an abuse of

15

discretion.  Such an abuse occurs only when the trial court acts in an "'""'"arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'""'"  [Citation.]"  (*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 366.)

## III

## DISPOSITION

The judgment and orders are affirmed.  In the interest of justice, and because neither Rothman nor Fannie Mae prevailed on their respective appeals, each party shall bear his or its own costs.  Brookhurst shall recover its costs on appeal as it was not party to Rothman's appeal.

MOORE, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

BEDSWORTH, J.

16