[No. B224841. Second Dist., Div. Seven. June 22, 2011.]

JON M. GUNDERSON, Plaintiff and Respondent, v.
RICHARD WALL et al., Defendants and Appellants.

COUNSEL

Ivie, McNeill & Wyatt, Rickey Ivie and Jennifer R. Jacobs for Defendants and Appellants.

Baute Crochetiere & Maloney, Mark D. Baute, David P. Crochetiere and Patrick M. Maloney for Plaintiff and Respondent.

OPINION

ZELON, J.—

## INTRODUCTION

A jury awarded respondent Jon M. Gunderson $1.7 million in compensatory damages and $800,000 in punitive damages against appellants Richard Wall and Welded Fixtures, Inc. Appellants paid the judgment and filed an appeal. In a prior decision, we affirmed the jury's award of compensatory damages, but ruled there was insufficient evidence to support punitive damages. Gunderson voluntarily repaid appellants $800,000, representing the punitive damages award.

Appellants then filed a motion in the trial court seeking restitution for interest that had accrued on the punitive damages payment during the pendency of the appeal. The court, finding inequitable conduct during the postjudgment proceedings, denied the motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Gunderson's Lawsuits Against Christopher Gruys, Richard Wall and Welded Fixtures, Inc.

In March 2004, respondent Jon Gunderson filed a complaint against his former tax accountant, Christopher Gruys, for fraud, breach of contract, breach of fiduciary duty and conversion (*Gruys* Action). The case proceeded to trial and, in December 2006, a jury awarded Gunderson approximately $11 million. Gunderson attempted to collect on the judgment, but was unable to recover a significant portion of his award.

While the *Gruys* Action was still pending, Gunderson filed a second action against Gruys, Richard Wall and Wall's company, Welded Fixtures, Inc. The complaint alleged that, to evade paying a judgment in the *Gruys* Action,

Gruys fraudulently transferred $1.3 million to Welded Fixtures. On October 4, 2007, a jury entered a verdict in favor of Gunderson and awarded compensatory damages in the amount of $1.7 million. In addition, the jury found defendants acted with malice, fraud, or oppression, and awarded punitive damages in the amount of $2.4 million against Gruys, $600,000 against Wall and $200,000 against Welded Fixtures. Wall and Welded Fixtures appealed the judgment.

While the appeal was pending, Gunderson attempted to execute on the judgment. After unsuccessfully attempting to serve appellants with writs of execution, Gunderson successfully moved to install a receiver at Welded Fixtures. When the receiver arrived at the company, it discovered that computers and financial documents had been removed from the premises. The receiver notified the court, which entered a writ of body attachment requiring Wall to personally appear to answer questions regarding the apparent theft. Although the missing items were anonymously returned to Welded Fixtures, Wall refused to appear before the court.

Approximately four months after the judgment was issued, Wall agreed to provide Gunderson a $2.6 million check, which was intended to cover "the judgment, interest and costs." In exchange, Gunderson agreed to stop his collection efforts, withdraw the receiver from Welded Fixtures and refrain from seeking enforcement of the court's writ of body attachment. Gunderson also agreed that statutory interest on the judgment would cease upon delivery of the check. When Gunderson received the check, he refused to issue a satisfaction of judgment, asserting that Wall was still liable for various collection costs and receiver fees.

### B. *Reversal of Punitive Damages and Appellants' Motion to Pay Interest*

On November 17, 2009, we affirmed the jury's finding that Wall and Welded Fixtures engaged in fraudulent transfers, but held that there was insufficient evidence to support the jury's award of punitive damages. In our disposition, we reversed the award of punitive damages, but affirmed the judgment "in all other respects." The case was remitted to the trial court on January 21, 2010.

On January 29, 2010, appellants' counsel requested that Gunderson repay the $800,000 punitive damages award, along with interest that had accrued on that sum during the pendency of the appeal. Gunderson voluntarily returned $800,000, but declined to pay interest.

On March 2, 2010, appellants moved for restitution from Gunderson for interest on the punitive damages award. Gunderson opposed the motion,

arguing that it would be inequitable to require him to pay interest because he had been forced to spend a significant amount of time and money to execute the judgment.

Gunderson's opposition was accompanied by a declaration describing numerous acts appellants had committed to avoid paying the judgment. Gunderson alleged that shortly after the judgment was entered, Wall "resigned" as Welded Fixtures's agent for service and refused to name a replacement. In addition, Wall went into hiding to avoid personal service of process. As a result of these acts, Gunderson was forced to obtain an order appointing a receiver to take possession of Welded Fixtures. Gunderson's declaration also cited the fact that Wall had ignored the trial court's writ of body attachment, which ordered him to appear before the court to answer questions about the removal of computers and other property from Welded Fixtures's premises. Gunderson alleged that, in total, he had spent over $100,000 on attorney's fees and costs that were "related solely to efforts to enforce his judgment."

In their response brief, appellants did not dispute that they had engaged in evasive conduct to avoid paying the judgment or that Gunderson had expended a significant sum to collect the judgment. Instead, appellants argued that, "in properly deciding whether to award interest," the trial court was not permitted to consider the parties' postjudgment conduct.

At the hearing, appellants' counsel argued that "any attempts [appellants] made to avoid execution on the punitive damage portion of the judgment" were "justified, in part" because the appellate court found there was insufficient evidence to support punitive damages. The trial court denied the motion, stating "I'm exercising my discretion to deny the motion." A subsequently issued minute order stated that "Defendant's motion is DENIED as it would be inequitable to grant it. [¶] The Court bases its decision on some of the equitable issues raised in the opposition." Appellants filed a timely appeal.

## DISCUSSION

### A. *Summary of Legal Principles and Standard of Review*

■ "A person whose property has been taken under a judgment 'is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable.' " (*Stockton Theatres, Inc. v. Palermo* (1953) 121 Cal.App.2d 616, 619 [264 P.2d 74] (*Stockton Theatres*).) Code of Civil Procedure section 908 provides that, upon the reversal or modification of a judgment, "the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or

execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order . . . ." Although this statutory provision is limited to "the reviewing court," a trial court whose order or judgment has been reversed on appeal has inherent authority to afford similar relief. (*Rogers v. Bill & Vince's, Inc.* (1963) 219 Cal.App.2d 322, 324–325 [33 Cal.Rptr. 129] (*Rogers*); *Schubert v. Bates* (1947) 30 Cal.2d 785, 789 [185 P.2d 793] ["the power of a court whose order or judgment has been reversed to order restoration after reversal is inherent in that court"].) Following reversal, a party may seek restitution from the trial court by a motion " 'in the original action itself [citation], or . . . in a separate action instituted for that purpose.' " (*Stockton Theatres, supra*, 121 Cal.App.2d at p. 620.) "The fundamental rule guiding the court in [such] proceeding[s] [i]s, so far as possible, to place the parties in as favorable a position as they could have been in had the judgments not been enforced pending appeal." (*Id.* at p. 632.)

Whether a party is entitled to restitution following reversal "present[s] a question calling for judicial discretion in determining what equity required." (*Stockton Theatres, supra*, 121 Cal.App.2d at p. 632.) The court's ruling will not be disturbed "in the absence of a showing of manifest abuse of . . . discretion." (*Rogers, supra*, 219 Cal.App.2d at p. 325; see also *Stockton Theatres, supra*, 121 Cal.App.2d at p. 632.) It is appellants' burden to demonstrate that the court's "discretion was so abused that it resulted in a manifest miscarriage of justice." (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 359 [92 Cal.Rptr.2d 709] [where "trial court's decision was one subject to an exercise of its equitable powers, . . . the only issue . . . is whether that discretion was so abused that it resulted in a manifest miscarriage of justice"].)

B. *The Trial Court Did Not Abuse Its Discretion in Denying Interest*

On appeal, Wall and Welded Fixtures do not deny that they deliberately attempted to avoid paying the judgment during the pendency of the underlying appeal. Nor do they deny that, as a result of their conduct, Gunderson was forced to expend a significant amount of time and money to collect his award.[1] Instead, appellants, relying primarily on *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061 [13 Cal.Rptr.3d 586] (*Textron*), contend that "[t]he fact a plaintiff incurs attorney fees and costs in collecting on the judgment is not a proper basis for denying an award of interest."

---

[1] Because appellants have not denied these allegations, we accept them as true.

In *Textron*, a jury found the defendant liable for breach of contract and fraud. During the pendency of the appeal, the defendant paid the judgment, which included $1.7 million in punitive damages. (*Textron, supra,* 118 Cal.App.4th at p. 1066.) The appellate court, however, reduced the punitive damages award to $360,000. The defendant contended that, based on the appellate court's ruling, he was "entitled to not only recover the constitutionally excessive portion of the punitive damage award, but interest on it from the date of payment." (*Id.* at p. 1085.) In response, the plaintiff argued that it would be inequitable to require it to pay interest because: (1) it had incurred significant costs and fees while litigating the underlying lawsuit, and (2) the jury found that the defendant engaged in "fraudulent conduct." (*Id.* at pp. 1085–1086.)

The appellate court ruled that although it had discretion to refuse interest if to do so "would be inequitable under the circumstances," the plaintiff had not identified a sufficient justification to deny the defendant's request. (*Textron, supra,* 118 Cal.App.4th at pp. 1085–1086.) First, the court rejected the plaintiff's contention that "an opponent's cost of litigating a matter constitutes a basis for denying restitution . . . ." (*Id.* at p. 1086.) The court reasoned that if expenditures during the litigation were sufficient to deny restitution "few parties would be entitled to relief." (*Ibid.*) The court further concluded that the jury's finding that the defendant committed fraud was not relevant to assessing whether the defendant was entitled to restitution following the reversal of his punitive damages. As explained by the court, "[d]efendant's fraudulent conduct occurred in the events leading to this litigation. There is no indication it engaged in inequitable conduct in the postjudgment proceedings." (*Ibid.*)

The facts of *Textron* demonstrate that its holding has little relevance here. Gunderson does not argue that it would be inequitable to award interest because of the costs he incurred at trial or because the jury found that appellants engaged in fraudulent transfers. Instead, Gunderson asserts that interest should not be awarded because appellants' misconduct during the postjudgment collection proceedings forced him to spend over $100,000 to execute on his award. The *Textron* decision specifically left open the question presented here: whether, based on a finding of inequitable conduct in the postjudgment proceedings, the trial court may properly deny interest.

Appellants also argue that while the award of interest following a reversal is discretionary, "the vast majority of cases have awarded interest." (*PSM Holding Corp. v. National Farm Financial Corp.* (C.D.Cal. 2010) 743 F.Supp.2d 1136, 1155.) Those decisions have generally reasoned that repayment of interest is appropriate because a plaintiff who collects his judgment pending appeal assumes the risk that it may have to repay the

award, along with interest, if the defendant prevails in that appeal. (*Id.* at p. 1141; see also *Strong v. Laubach* (10th Cir. 2006) 443 F.3d 1297, 1300.) Appellants assert the same principles apply here because "Gunderson was not required to execute on the judgment while . . . [the] appeal [was] pending." However, none of the cases appellants cite involved allegations that the defendant engaged in extraordinary misconduct during the postjudgment collection proceedings. These authorities are therefore inapposite.

■ Although we are not aware of any published opinion that has decided the issue presented here, we conclude that the trial court acted within its discretion. The statutes and decisions of this state make clear that, when deciding whether to award restitution following reversal, the goal of the court is to return the parties "so far as possible to the positions they occupied before the enforcement of or execution on the judgment." (Code Civ. Proc., § 908; see *Stockton Theatres, supra,* 121 Cal.App.2d at p. 632.) Rather than simply paying the judgment after Gunderson sought to execute on his award, appellants chose to engage in extensive and prolonged evasive misconduct.[2] These actions forced Gunderson to unnecessarily expend over $100,000 to secure his judgment. By permitting Gunderson to retain whatever interest had accrued on the reversed portion of his award, the trial court was, in effect, attempting to return him to the position he held prior to the execution of the judgment.[3] (See *Stockton Theatres, supra,* 121 Cal.App.2d at p. 632 [in assessing request for restitution, goal of trial court is "so far as possible, to place the parties in as favorable a position as they could have been in had the judgments not been enforced pending appeal"].)

■ The trial court was uniquely positioned to determine how appellants' conduct affected the issue of restitution. (See generally *Stockton Theatres, supra,* 121 Cal.App.2d at p. 632 ["[w]hether . . . it would be just and equitable that interest be charged" following the reversal of judgment "presented an issue peculiarly for the trial court to determine"].) The record demonstrates that, on multiple occasions, the trial court had to intervene in the execution proceedings to ensure Gunderson could recover his award. After appellants successfully evaded Gunderson's attempt to serve writs of execution, the court appointed a receiver to take possession of Welded Fixtures. When financial documents went missing from the company's premises, the court issued a writ of body attachment against Wall, who then

---

[2] Appellants also could have stayed enforcement of the money judgment by posting a bond. (See Code Civ. Proc., § 917.1, subd. (a)(1).) Because they elected not to do so, Gunderson was entitled to collect his award prior to the completion of the appeal.

[3] Appellants contend that allowing Gunderson to retain the interest that accrued on the reversed portion of the award would provide him with "a large windfall." Appellants overlook the fact that, through their misconduct, they forced Gunderson to pay over $100,000 to secure his judgment. Thus, permitting Gunderson to retain the interest was not a windfall, but rather made him whole for the money he lost during the collection proceedings.

ignored the court's order. The trial court had detailed knowledge of appellants' postjudgment behavior, and properly employed that knowledge to assess whether appellants should collect interest in light of such conduct.[4]

## DISPOSITION

The trial court's order denying appellants' motion for restitution is affirmed. Respondent is to recover his costs on appeal.

Woods, Acting P. J., and Jackson, J., concurred.

---

[4] Appellants also argue that the rate of interest on the reversed portion of the award should be calculated at either the statutory prejudgment rate of 7 percent (see Civ. Code, § 3287) or the statutory postjudgment rate of 10 percent (see Code Civ. Proc., § 685.010). Plaintiff, however, contend that those statutory rates do not apply to an award of restitution following a reversal of judgment and that the proper rate of interest should be determined by market conditions. Because we conclude that the trial court did not abuse its discretion in denying interest, we need not decide the appropriate rate of interest that would otherwise apply in this case.