Filed 11/30/20  Kerley v. Weber CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| SARAH L. KERLEY, as Administrator, etc., | B297370 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YS024039) |
| v. | |
| MARCIA ANN WEBER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Deirdre H. Hill, Judge.  Affirmed.

Haney & Young and Steven H. Haney for Defendant and Appellant.

Hill, Farrer & Burrill, Julia L. Birkel, Dean E. Dennis and Clayton J. Hix for Plaintiff and Respondent.

_____

Marcia Ann Weber appeals from a postjudgment order concerning the amount that she currently owes on the judgment. The judgment at issue is for restitution that Weber owes following her criminal conviction for theft from an elder under Penal Code section 368, subdivision (d). On appeal from the restitution order, this court affirmed the trial court's decision to award prejudgment interest on the restitution amount. (*People v. Weber* (Oct. 4, 2013, No. B244008 [nonpub. opn.], mod. Oct. 13, 2013 (*Weber I*).)

The victim's then-conservator, Sarah L. Kerley,[1] filed this action to enforce the judgment that the Estate obtained for the restitution amount (the Restitution Judgment). The Estate obtained an order to sell Weber's residence to satisfy the Restitution Judgment. Weber appealed from that order.

In that appeal, we held that the restitution payments Weber made prior to entry of the Restitution Judgment should be credited to the principal amount of the judgment rather than to accrued interest. (See *Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1200–1201 (*Weber II*).) We remanded and directed the trial court to calculate the amount remaining on the Restitution Judgment after crediting prejudgment payments to principal. (*Ibid.*) Following remand, the trial court did so.

Weber now appeals from the trial court's order calculating the judgment amount. Weber argues that: (1) she was entitled to a jury trial concerning that calculation; (2) the trial court improperly included prejudgment interest in the amount of the

---

[1] The victim, Philippa Johnston, died during the criminal prosecution. Her estate, administered by Kerley (Estate), is the respondent in this appeal.

Restitution Judgment for purposes of calculating *postjudgment* interest; and (3) the trial court should have credited postjudgment payments to principal before interest. We reject all three arguments and affirm.

## BACKGROUND

### 1. The Restitution Judgment

We briefly summarize only the facts relevant to this appeal. A more complete factual and procedural background is set forth in *Weber I*, *supra*, B244008, and *Weber II*, *supra*, 27 Cal.App.5th, 1187.

Following Weber's conviction, Weber and the prosecution agreed to a total restitution amount of $700,000, which they stipulated should be reduced to $414,545.99 to account for restitution payments that Weber had already made. (*Weber II, supra,* 27 Cal.App.5th at pp. 1192, 1200.) On July 11, 2012, the Estate obtained the Restitution Judgment. (*Id.* at p. 1192.) That judgment ordered restitution to the Estate in the amount of $700,000 "plus interest at 10 percent per year from the date of loss" (i.e., March 15, 2006).[2]

In *Weber I*, this court upheld the award of prejudgment interest in the Restitution Judgment even though the court in the criminal prosecution did not mention interest in the original restitution order. We concluded that interest was mandatory under Penal Code section 1202.4, and that the Restitution

---

[2] The $700,000 amount represented the " 'total amount of restitution awarded,' and did not 'purport to abrogate the stipulation with respect to the offset' " for the restitution amounts that Weber had already paid. (*Weber II, supra,* 27 Cal.App.5th at p. 1192, fn. 6, quoting *Weber I.*)

Judgment was a " 'valid modification of the restitution order.' " (*Weber II, supra,* 27 Cal.App.5th at p. 1192, quoting *Weber I.*)

The Estate filed the Restitution Action to enforce the Restitution Judgment. The Estate sought an order for the sale of a house in Manhattan Beach belonging to Weber. The trial court granted that order. In calculating the amount due on the Restitution Judgment in its order for the sale, the court credited Weber's prejudgment restitution payments to accrued prejudgment *interest* rather than to the $700,000 principal. (*Weber II, supra,* 27 Cal.App.5th at pp. 1192, 1199.) Weber appealed from that order.

## 2.     The Probate Judgment

The Estate also pursued a separate action against Weber under the Probate Code (the Probate Action). Among other things, the Estate sought enhanced damages under Probate Code section 859. (*Weber II, supra,* 27 Cal.App.5th at p. 1193.)

The Estate obtained a judgment in the Probate Action for $1.4 million—twice the amount of the restitution award—plus attorney fees and costs (the Probate Judgment). (*Weber II, supra,* 27 Cal.App.5th at p. 1193.) Weber appealed that judgment.

## 3.     *Weber II*

*Weber II* considered the consolidated appeals in the Restitution Action and the Probate Action. We affirmed the Probate Judgment in full. (*Weber II, supra,* 27 Cal.App.5th at p. 1201.) We also affirmed the Restitution Judgment in all respects except for the trial court's ruling crediting Weber's prejudgment restitution payments to accrued interest rather than to principal. We concluded that the interested parties had agreed to credit the prejudgment payments to principal rather than to interest, and we gave effect to that agreement under Civil

4

Code section 1479. (*Weber II, supra,* 27 Cal.App.5th at pp. 1199–1200.) We ordered the Restitution Action remanded to the trial court "with directions to calculate the amount remaining on the Restitution Judgment after crediting Weber's payments prior to July 11, 2012, to the principal amount of the restitution obligation." (*Id.* at p. 1201.)

4.     **Proceedings on Remand**

Following remand, the Estate filed a "Motion After Remittitur to Determine the Balance Owed on the Judgment and for Issuance of Amended Order for Sale of Dwelling." The motion was supported by a declaration from a certified public accountant, Brandy Ungar, calculating the amount due on the Restitution Judgment after crediting Weber's prejudgment restitution payments to principal rather than to interest.

Ungar applied Weber's restitution payments to principal until July 11, 2012, the date of the Restitution Judgment. As of that date, the remaining principal amount was $398,545.99 and the accrued prejudgment interest was $381,558.81. Ungar combined those two amounts into a total judgment amount of $780,104.80.

Ungar then credited Weber's postjudgment payments first to postjudgment interest and then to the principal amount of $780,104.80. This resulted in a total amount of $639,383.04 due on the Restitution Judgment as of the date of the Estate's motion (Jan. 9, 2019), consisting of $441,122.39 in principal and $198,260.65 in accrued postjudgment interest.

Weber opposed the Estate's motion. Weber argued that she was entitled to a jury trial on the issue of the amount due under the Restitution Judgment. She also argued that Ungar's methodology was incorrect.

5

Weber submitted a declaration from her own expert accountant, Jacqueline Benyamini. Unlike Ungar, Benyamini did not combine the outstanding principal and the accrued prejudgment interest to compute a new principal amount for the Restitution Judgment. And she credited all of Weber's restitution payments—both before and after the Restitution Judgment—first to principal and then to accrued interest.

This methodology resulted in the conclusion that Weber had completely paid off the principal amount of the Restitution Judgment by July 2013, when Weber made a large payment of $389,000. Benyamini calculated a remaining interest amount of $398,858 at that time, which Weber's subsequent payments reduced to $359,858 at the time of the Estate's motion.[3]

The trial court granted the Estate's motion. The trial court rejected Weber's argument that she was entitled to a jury trial. The trial court also accepted Ungar's methodology for calculating the amount due on the Restitution Judgment. The court concluded that "post judgment interest accrues on the full amount of the judgment which judgment necessarily included prejudgment interest." Consistent with Ungar's calculations, the court found that the "principal remaining on the civil judgment as of January 9, 2019, is $441,122.30 plus accrued interest of $198,383.04, for a total of $639,383.04, with interest accruing from January 9, 2019, at the rate of $120.85 per day."

---

[3] Thus, even under Weber's methodology, she still owed a significant amount of accrued interest on the Restitution Judgment at the time of the Estate's motion. Weber's assertion in this appeal that she "*overpaid* and, as a result, her home cannot be sold," is therefore puzzling.

## DISCUSSION

**1. Weber's Appeal is Not Moot**

The Estate argues that Weber's appeal is moot because the Restitution Judgment has now been satisfied. The Estate requested, and we granted, judicial notice of documents showing that, during this appeal, the Estate obtained an order in the Probate Action for the sale of Weber's house. That sale resulted in a credit that satisfied the Restitution Judgment.

The noticed documents show that, in ordering the sale of Weber's house, the court in the Probate Action identified the Restitution Judgment as a senior lien to be satisfied from the sale proceeds. The court's order stated that the amount of the lien was $639,383.04—the full amount that the trial court ruled was owed on the Restitution Judgment.

It appears that the amount due on the Probate Judgment before the sale was $2,844,427.49, and that the house sold for $1,395,000. Thus, the sale of Weber's house satisfied the Restitution Judgment, but was apparently not sufficient to satisfy the Probate Judgment.

Satisfaction of the Restitution Judgment does not moot this appeal. If successful, Weber's appeal could reduce the amount that should have been credited toward the lien for the Restitution Judgment from the sale of Weber's house. That would in turn *increase* the amount that the Estate should have received from the sale as payment on the Probate Judgment.

Thus, the issue raised in this appeal—whether the trial court correctly calculated the amount owed on the Restitution Judgment—could have an effect on Weber's current obligation on the Probate Judgment. There is no indication in the record that the Estate has forgiven any amount of that judgment.

7

The fact that the Restitution Judgment has now been satisfied through an involuntary sale on a writ of execution would not preclude Weber from seeking a remedy for an overpayment on the Restitution Judgment, such as a greater credit against the Probate Judgment or restitution of the amount of the overpayment. This court has the authority to make an order directing "that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on" an order that has been reversed on appeal. (See Code Civ. Proc., § 908.)[4] The trial court has "inherent authority to afford similar relief." (*Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1064–1065 [trial court had discretion to order the restitution of interest that the appellant had paid on a punitive damage award that was reversed on appeal].)

This appeal is therefore not moot, and we proceed to consider the issues that Weber has raised.

## 2. Weber Was Not Entitled to a Jury Trial to Determine the Amount Due on the Restitution Judgment[5]

Weber argues that she had a right to a jury trial on the issue of the amount due on the Restitution Judgment because, in remanding the case following *Weber II,* this court identified a "factual dispute" on the effect of crediting prejudgment payments

---

[4] Subsequent undesignated statutory references are to the Code of Civil Procedure.

[5] The parties agree that the de novo standard of review applies to the issues on this appeal. We concur. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [issues of law are reviewed de novo].)

8

to principal. (*Weber II, supra,* 27 Cal.App.5th at p. 1201.) We reject the argument.

In *Weber II,* we noted that the parties disputed whether the Restitution Judgment had already been satisfied if Weber's prejudgment payments were credited to principal rather than to interest. We then explained that, in light of this "factual dispute," we "leave it to the trial court to determine whether a sum remains owing on the Restitution Judgment and, if so, the amount of that sum." (*Weber II, supra,* 27 Cal.App.5th at pp. 1200–1201.)

That direction to the trial court was consistent with the court's role under the governing statutes. Sections 724.010 through 724.100 govern the procedure for satisfaction of judgments. Under section 724.030, a judgment creditor is required to file an acknowledgment of satisfaction of judgment when a judgment has been satisfied. In the event of a dispute, section 724.050, subdivision (d) assigns to the trial court the responsibility to determine if a judgment has in fact been satisfied. That section provides that, if a judgment creditor does not comply with a judgment debtor's request to provide an acknowledgment of satisfaction of judgment, "the person making the demand may apply to the court on noticed motion for an order requiring the judgment creditor to comply with the demand. . . . If the *court* determines that the judgment has been satisfied and that the judgment creditor has not complied with the demand, the court shall either (1) order the judgment creditor to comply with the demand or (2) order the court clerk to enter satisfaction of the judgment." (§ 724.050, subd. (d), italics added.)

"This section has been interpreted to require the trial court to first determine whether the judgment has been satisfied *in fact*

before ordering entry of satisfaction of judgment." (*Schumacher v. Ayerve* (1992) 9 Cal.App.4th 1860, 1863, italics added; see *Pierson v. Honda* (1987) 194 Cal.App.3d 1411, 1414, fn. 4.) This statutory procedure is the exclusive mechanism for obtaining an order compelling an acknowledgment that a judgment has been satisfied. (*Quintana v. Gibson* (2003) 113 Cal.App.4th 89, 90.)

Thus, the Legislature has determined that it is the task of the trial court, not a jury, to determine whether a judgment has been satisfied. The trial court here properly complied with this court's directions and with the governing statutes by determining on remand whether any amount was still due on the Restitution Judgment and, if so, how much.

Weber cites section 592, which provides for a jury trial on issues of fact in "actions for the recovery of specific, real or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries." The trial court's order did not decide any claim for the return of property or money or for damages. It simply decided the amount due on a judgment that already existed. Moreover, we presume that the Legislature intended section 724.050, which specifically governs the procedure for determining whether a judgment has been satisfied, to control that procedure rather than section 592, which is a general statute on the right to a jury trial. (See *Estate of Kramme* (1978) 20 Cal.3d 567, 576 ["if a specific statute is enacted covering a particular subject, the specific statute controls and takes priority over a general statute encompassing the same subject"].)

Weber also suggests that even if she did not have a right to a jury trial, she was at least entitled to an evidentiary hearing. She cites no authority for that proposition. The procedure under

10

section 724.050 for a noticed motion to determine if a judgment has been satisfied is inconsistent with a requirement for an evidentiary hearing.  Motions on collateral issues are generally decided by means of declarations rather than live testimony. (See § 2009; *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1355–1356.)

So far as the record shows, Weber also did not request an evidentiary hearing.  Weber did argue below that she was entitled to a jury trial, but she did not ask for the opportunity to present oral testimony in the event the court decided to hear the matter on noticed motion.

Under California Rules of Court, rule 3.1306(b) she was required to file a written statement three days before the hearing on the Estate's motion "stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing."  She did not do so, and has therefore forfeited the issue.  (*Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [parties could not question the propriety of deciding an issue based on affidavits when they did not object below and participated in the procedure].)

In any event, based on the record following remand from *Weber II*, there was no factual dispute to resolve through either a jury trial or an evidentiary hearing.  The only dispute between the parties concerned the legal issue of the proper *methodology* for calculating interest.  There was no dispute over factual questions such as how much Weber had actually paid.  The Estate's expert, Ungar, accepted Weber's testimony concerning the dates and amounts of her restitution payments.

As in this appeal, the parties disputed whether prejudgment interest should be included in the Restitution

11

Judgment amount for purposes of calculating postjudgment interest. The parties' experts also took different positions on whether Weber's postjudgment payments should be credited to principal or interest.[6] These are legal issues. Weber did not claim below, and does not argue on appeal, that Ungar failed to credit particular payments or used faulty math.

Thus, even if Weber had a right to a jury trial or an evidentiary hearing to resolve factual disputes concerning the amount of the Restitution Judgment, the record does not show that any such disputes existed.

3.      **The Trial Court Properly Included Prejudgment Interest in the Amount of the Restitution Judgment**

The Restitution Judgment ordered restitution in the amount of $700,000 "plus interest at 10 percent per year from the date of the loss." Thus, the Restitution Judgment included prejudgment interest as a part of the money judgment.

The Restitution Judgment is enforceable in the same manner as any other civil judgment. Penal Code section 1202.4, subdivision (i) provides that a "restitution order imposed pursuant to subdivision (f) shall be enforceable as if the order

---

[6] Weber's expert, Benyamini, credited payments that occurred after entry of the Restitution Judgment to principal. Those postjudgment payments included a large payment of $389,000 in July 2013, a year after the Restitution Judgment had been entered. Benyamini applied that payment to principal, which she concluded paid off the principal in full, leaving only a remaining balance for accumulated interest. In contrast, Ungar credited postjudgment payments first to the accrued postjudgment interest and then to principal.

were a civil judgment." Similarly, Penal Code section 1214, subdivision (b) states that if a criminal defendant stipulates to the amount of restitution (as Weber did here), a restitution order "shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment." (*Weber II, supra,* 27 Cal.App.5th at p. 1194.)

Because prejudgment interest was included in the Restitution Judgment as a part of the money judgment, the trial court properly treated the accumulated prejudgment interest as part of the principal amount of the Restitution Judgment for purposes of calculating postjudgment interest. Contrary to Weber's argument, that procedure was not an improper use of compound interest.

" 'Although compound interest generally is not allowable on a judgment, it is established that a judgment bears interest on the whole amount from its date even though the amount is in part made up of interest. . . . As a consequence, compound interest may in effect be recovered on a judgment whereby the aggregate amount of principal and interest is turned into a new principal.' " (*Big Bear Properties, Inc. v. Gherman* (1979) 95 Cal.App.3d 908, 913 (*Big Bear*), quoting 45 Am.Jur.2d, Interest and Usury, § 78, p. 71; see *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 894–895 ["The only exception to the rule that interest on interest (i.e. compound interest) may not be recovered is in situations in which interest is included in a judgment which then bears interest at the legal rate"].)

This principle applies regardless of the nature of the action underlying the judgment. (*Big Bear, supra,* 95 Cal.App.3d at pp. 913–914.) The principle is reflected in rule 3.1802 of the

13

California Rules of Court, which directs that a clerk entering a judgment "include in the judgment any interest awarded by the court."

Weber cites our Supreme Court's decision in *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516 (*Hess*), but that case does not apply here. In *Hess*, the court decided that the specific language of Civil Code section 3291 did not permit compounding interest by including prejudgment interest in the judgment amount.

Civil Code section 3291 states that if a plaintiff makes a statutory settlement offer pursuant to Code of Civil Procedure section 998 and then obtains a more favorable judgment, the plaintiff is entitled to interest " 'from the date of the plaintiff's first offer . . . which is exceeded by the judgment . . . until the satisfaction of judgment.' " (*Hess*, *supra*, 27 Cal.4th at pp. 530, 531.) The court in *Hess* concluded that "the statute carefully defines the time period for accruing interest using a date *before* the judgment—the date of the [Code of Civil Procedure] section 998 offer—and a date *after* the judgment—the date the judgment is satisfied. [Citation.] Thus, [Civil Code] section 3291 provides for a *single* award of interest and expressly eschews any division of this award into separate prejudgment and postjudgment components." (*Hess, supra,* 27 Cal.4th. at p. 531.) The court also concluded that the legislative history of Civil Code section 3291 supported this interpretation. (*Hess*, at pp. 531–532.)

The court held that the specific statutory language in Civil Code section 3291 controlled over former rule 875 of the California Rules of Court (the predecessor to rule 3.1802). (See *Hess, supra,* 27 Cal.4th at p. 532.) The court specifically distinguished *Big Bear* and other cases on the ground that they "involved statutes or contracts with different language and/or

14

legislative histories than Civil Code section 3291." (*Hess*, at pp. 532–533.)

Weber has not identified any statute similar to Civil Code section 3291 that would preclude computing postjudgment interest on the full amount of the Restitution Judgment.

The statutes that govern the enforcement of restitution awards as a civil judgment do not contain any such provision. Penal Code section 1202.4, subdivision (f)(3)(G) authorizes as an element of restitution "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court." (See *Weber I, supra*, B244008 ["Section 1202.4 clearly mandates the imposition of interest on every award of victim restitution"].) Such interest is a component of the "dollar amount" that Penal Code section 1202.4, subdivision (f)(3) directs "shall be . . . sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Nothing in this language precludes following the otherwise applicable procedure of incorporating accrued prejudgment interest in the principal amount of a restitution judgment for purposes of calculating postjudgment interest.

Indeed, as mentioned, the governing statutes specifically state that a judgment issued on a restitution award should be treated as a civil judgment. (See Pen. Code, §§ 1202.4, subd. (i), 1214, subd. (b) [order to pay restitution "shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment"].) Under the rules that apply to civil judgments, postjudgment interest is calculated

15

based on the *entire* amount of the judgment, including accrued prejudgment interest that is included in the judgment amount.

4.    **The Trial Court Properly Calculated the Amount Due on the Restitution Judgment by Crediting Postjudgment Payments First to Accrued Interest and Then to Principal**

Weber claims that "[w]ith respect to the restitution payments made by [Weber] after the July 2013 lump sum payment, it was erroneous as a matter of law, for the Trial Court to apply those payments against interest."[7] Weber is wrong.

As this court noted in *Weber II,* section 695.220 provides that " '[m]oney received in satisfaction of a money judgment' should first be applied to fees and accumulated interest" and then to " 'the principal amount of the judgment remaining unsatisfied.' " (*Weber II, supra,* 27 Cal.App.5th at p. 1199, citing § 695.220, subds. (a)–(d).) The trial court properly followed this

_____

[7] It is unclear why Weber attributes any significance to the July 2013 date. That date was a year after the Restitution Judgment was entered. Moreover, Ungar's calculations, on which the trial court's order was based, accounted for Weber's postjudgment payments in the same manner both before and after the July 2013 payment. Ungar consistently applied Weber's postjudgment payments first to accrued interest and then to principal. Ungar properly credited the July 2013 "lump sum" payment of $389,000 first to pay off the accrued postjudgment interest (at that time amounting to $51,396.36), and then to the outstanding principal of $780,104.80, which reduced the principal to $442,501.16.

16

procedure in crediting Weber's postjudgment payments first to accrued interest and then to principal.[8]

## DISPOSITION

The trial court's order is affirmed.  The Estate is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

---

[8] In contrast, as discussed above, Weber's expert calculations were flawed because they credited Weber's *postjudgment* payments first to principal rather than to accrued interest.  That included the $389,000 payment in July 2013, which Benyamini incorrectly concluded paid off the remaining principal.