Filed 6/2/26  Spizzirri v. Baptiste CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARC J. SPIZZIRRI, | |
| Plaintiff and Appellant, | G064482 |
| v. | (Super. Ct. No. 30-2016-00861812) |
| BARRY BAPTISTE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed.

Law Office of Frank W. Battaile and Frank W. Battaile for Plaintiff and Appellant.

Barry Baptiste, in pro. pers., for Defendants and Respondents.

\*　　　\*　　　\*

In a prior lawsuit, a $1.55 million judgment was entered against plaintiff Marc J. Spizzirri and in favor of defendant MACH-1 Autogroup (Mach-1). While Spizzirri's appeal of that judgment was still pending, Mach-1 began enforcing it. Among other things, Mach-1 obtained control of an entity Spizzirri owned called Auto Orange II, LLC (Auto Orange). The $1.55 million judgment was later reversed on appeal and the matter remanded for a new trial. Following reversal, Auto Orange was transferred back to Spizzirri. Spizzirri then filed this lawsuit against Mach-1, its owners, and several other affiliated parties (collectively, defendants), claiming their mismanagement of Auto Orange had reduced its value by millions of dollars. The case proceeded to a bench trial. Following Spizzirri's presentation of evidence, the trial court granted defendants' motion for judgment under Code of Civil Procedure section 631.8.[1]

On appeal, Spizzirri contends the trial court erred by (1) striking his demand for a jury trial, (2) granting defendants' motion for judgment, and (3) excluding certain evidence. We find no error. First, the court correctly concluded that Spizzirri was not entitled to a jury trial because his lawsuit sounded in equity. Second, in ruling on the motion for judgment, the court applied the correct law, and Spizzirri has not shown that its factual findings are unsupported by substantial evidence. Finally, Spizzirri has not shown any errors in the court's evidentiary rulings.

The judgment is affirmed.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

2

## FACTS AND PROCEDURAL HISTORY

### I.

### JUDGMENT IN THE PRIOR LAWSUIT

This case arises from the failed sale of a car dealership. The seller was nonparty Family Investment Company, Inc. (Family Investment), whose principal shareholder is Spizzirri. The prospective buyer was Mach-1, which is owned and operated by defendants Barry Baptiste and Craig Baptiste, who are brothers.[2] (*Family Investment Company, Inc. v. Mach-1 Autogroup* (Apr. 3, 2015, G047783) [nonpub. opn.] (*Family Investment*).)

After the sale failed, Family Investment sued Mach-1 for breach of contract and fraud in Orange County Superior Court, case No. 30-2009-00126504 (the prior lawsuit). Mach-1 cross-complained against Family Investment and Spizzirri for breach of contract, fraud, and unjust enrichment. In 2012, the trial court entered a $1,550,000 judgment in favor of Mach-1 and against Family Investment and Spizzirri (the 2012 judgment). Family Investment and Spizzirri appealed. In 2015, this court reversed the 2012 judgment and remanded the matter for a new trial. (*Family Investment, supra,* G047783.)

### II.

### THE INSTANT LAWSUIT

After the 2012 judgment was reversed, Spizzirri filed this lawsuit against Barry, Craig, Mach-1, and several other parties (defined above as

---

[2] To avoid confusion, we refer to these parties by their first name. Before this appeal was fully briefed, defendants' attorneys withdrew from this case. Only Barry filed a respondent's brief, which he filed pro se.

3

defendants).[3] Spizzirri alleged that while the appeal of the 2012 judgment was pending, Mach-1 and Craig enforced the 2012 judgment by seizing his ownership interest in Auto Orange. Defendants then allegedly mismanaged Auto Orange, substantially decreasing its value.

In particular, Spizzirri alleged that Auto Orange owned a commercial property in San Juan Capistrano leased to the Chrysler Motor Corporation (the Chrysler property). Spizzirri conceded that Auto Orange was in default on its loan for the Chrysler property before defendants seized Auto Orange. But Spizzirri claimed that he had arranged for another entity to purchase the Chrysler property, which would have brought its loan current and resulted in a $5 million profit for Auto Orange (the Chrysler property deal).

Spizzirri alleged that after defendants took control of Auto Orange, they failed to pursue the Chrysler property deal. Instead, they caused Auto Orange to file for bankruptcy, which purportedly led to it losing the Chrysler property in foreclosure. Due to this loss, Spizzirri claimed that Auto Orange had a negative value when it was transferred back to Spizzirri after the 2012 judgment's reversal.

Based on the above allegations, Spizzirri asserted claims against defendants for restitution, breach of fiduciary duty, and negligence. As to the restitution claim, he sought $5 million for Auto Orange's loss of the Chrysler property. He also sought an order for defendants to pay overdue taxes and

---

[3] Spizzirri's wife, Candace Spizzirri, was also a plaintiff in this lawsuit. Marc Spizzirri owns 99 percent of Auto Orange while Candace Spizzirri owns a one percent share. Only Marc Spizzirri appealed the relevant judgment, and his opening brief does not mention Candace Spizzirri. Thus, we do not mention her in this opinion, and all references to "Spizzirri" only refer to Marc Spizzirri.

file overdue tax returns for Auto Orange. As to the two remaining claims, he sought $5 million in damages.

Spizzirri's trial brief cited another example of alleged mismanagement. Auto Orange owned real property in San Clemente that was improved with a defunct movie theater and a bowling alley (the Theater property). The Theater property had a $3,685,500 deed of trust held by Bank of America, which had gone into default prior to defendants' seizure of Auto Orange. Spizzirri's two business partners, Tony Ciabattoni and Frank Darras, formed a new entity, El Camino Real Estate Holdings, LLC (El Camino). El Camino bought out Bank of America's loan and became the holder of the promissory note and deed of trust on the Theater property. Spizzirri had no interest in El Camino.

Spizzirri was apparently unable to make payments to El Camino or repay Ciabattoni and Darras for their contributions, so he quitclaimed the Theater property from Auto Orange to the Anthony Ciabattoni Living Trust and the Frank Darras Revocable Trust. After defendants seized Auto Orange, they asserted this transfer was fraudulent. According to Spizzirri's trial brief, Defendants allegedly began threatening Ciabattoni and Darras with criminal liability and other consequences if they did not transfer the Theater property back to Auto Orange.

Ciabattoni and Darras eventually quitclaimed the Theater property back to Auto Orange. However, Spizzirri claimed that after this transfer, defendants failed to make any payments on El Camino's promissory note. El Camino then foreclosed on the deed of trust and became the Theater property's owner. It developed the Theater property and sold it in 2019, receiving $4 million in profit. Spizzirri claimed that defendants'

5

mismanagement of Auto Orange led to the Theater property's foreclosure, costing it $4 million in profits.

## III.

### THE PRIOR LAWSUIT'S RETRIAL AND SECOND APPEAL

The trial in this action was trailed to follow the retrial in the prior lawsuit, which occurred in January 2021. After retrial in the prior lawsuit, a $3.4 million judgment was entered against Spizzirri and in favor of Mach-1 (the 2021 judgment). (*Spizzirri v. Mach-1 Autogroup, LLC* (Feb. 22, 2024, G061814) [nonpub. opn.].) This court affirmed the 2021 judgment in February 2024. (*Ibid.*) Our Supreme Court denied review, and the 2021 judgment is now final.

## IV.

### TRIAL IN THIS ACTION

Trial in this action commenced in April 2024, after this court had affirmed the 2021 judgment.

### A. Motion in Limine

Prior to trial, defendants filed a motion in limine to strike Spizzirri's demand for a jury trial on grounds his lawsuit was equitable in nature (the motion in limine). The trial court granted the motion in limine. The court observed "that it's undisputed that a claim for restitution sounds in equity." While it recognized that Spizzirri also sought legal damages, it explained, "the facts of [this] case suggest that everything depends upon the application of equity, which means that this should be a bench trial." "The fact that damages is one of the possible remedies for a couple of the causes of action, or all of the causes of action, it doesn't mean that [Spizzirri has] a right to a jury trial." Rather, the court believed Spizzirri's negligence and

6

breach of fiduciary duty claims were ancillary and "merely incidental" to his equitable restitution claim.

## B. Motion for Judgment

After Spizzirri's presentation of evidence, defendants moved for judgment on the entire action under section 631.8 (the motion for judgment), which the trial court granted. The court later issued a statement of decision (the statement of decision).

The statement of decision provided various grounds for granting the motion for judgment. First, "there [was] insufficient evidence to sustain a finding that Defendants mismanaged [Auto Orange] or its assets." The court noted that Auto Orange was already "debt ridden and in default of its various loans" when defendants took control. "Events were moving at an incredible pace with competing interests and considerations in play, rendering the circumstances under which the [defendants] assumed management of [Auto Orange] particularly challenging. It appears speculative to fault the Defendants for how [they] managed [Auto Orange] or the Chrysler and Theater Properties during the specific times that [they] had possession of the properties or management control over [Auto Orange] . . . . To the contrary, it appears to the Court that Defendants endeavored to protect [Auto Orange] and its assets. The fact that Defendants moved [Auto Orange] into bankruptcy, for example, appears to the Court to have been done to benefit the company—it was intended to forestall the foreclosure sale scheduled for the Chrysler Property and to provide Defendants with additional time to assess the Chrysler Property's value and to clarify the nature and status of [Auto Orange's] assets."

7

Second, the court found that Spizzirri's "damages were speculative, rendering any award of damages lacking sufficient evidentiary support."

Finally, the trial court concluded "that it would be inequitable to provide an award of restitution to [Spizzirri], whether in the form of damages or restoration of specific property. [Citations.] [Spizzirri] appears to fault Defendants for essentially failing to accomplish in a short amount of time what [Spizzirri] was unable to accomplish himself during his management of [Auto Orange]. Under these circumstances and the record before the Court, an award of restitution to [Spizzirri] is not warranted."

The trial court entered judgment in defendants' favor and against Spizzirri (the judgment). On appeal, Spizzirri argues the court erred by (1) granting the motion in limine, (2) granting the motion for judgment, and (3) excluding certain evidence at trial.[4]

## DISCUSSION

### I.

### THE MOTION IN LIMINE

#### A. Procedural Issues

Spizzirri argues defendants' use of a motion in limine to strike his jury trial demand was procedurally improper. His argument is built on *Tung v. Chicago Title Co.* (2021) 63 Cal.App.5th 734, 758 (*Tung*), which cautioned that motions in limine "'are *not* designed to . . . to replace the

---

[4] Both Spizzirri and Barry filed requests for judicial notice of various documents. Both request are denied as unnecessary. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

*dispositive motions* prescribed by the Code of Civil Procedure.'" (Italics added.) *Tung* is unpersuasive.

First, *Tung*'s statements on motions in limine were dicta. The court prefaced it by stating, "Since it is unnecessary for us to decide this issue, we merely flag it for future reference and to highlight potential pitfalls these motions often create for trial judges . . . ." (*Tung, supra,* 63 Cal.App.5th at pp. 756–757.)

Second, the motion in limine was not a dispositive motion. It sought to strike a jury demand, not dispose of an entire claim or action. Thus, even if this portion of *Tung* were not dicta, it would be inapposite.

Finally, even if the motion in limine was comparable to a dispositive motion, *Tung*'s dicta did not state that a trial court cannot consider such a motion in limine. Rather, it stated that "[t]rial judges . . . should not feel compelled to have to decide these types of [motions in limine] just because trial counsel asks them to do so." (*Tung, supra,* 63 Cal.App.5th at p. 759.) Similarly, other appellate courts have discouraged the use of motions in limine to dispose of an entire action or claim, but they have recognized that trial courts have inherent authority to consider such motions. (See, e.g., *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595 ["In spite of the obvious drawbacks to the use of in limine motions to dispose of a claim, trial courts do have the inherent power to use them in this way"]; *People v. Superior Court (Cal Cartage Transportation Express, LLC)* (2020) 57 Cal.App.5th 619, 627, fn. 7 ["Trial courts have inherent powers to employ motions in limine to dispose of claims in appropriate circumstances"].)

Here, the trial court rejected Spizzirri's argument that the motion in limine was procedurally improper and exercised its inherent power to consider it. As the court explained, had defendants' request to strike the jury

demand "been a usual noticed motion, it would have been set further out, given the trial date, and then require an ex parte hearing, which I would likely have shortened time to set it today. So we'd be back to where we were. . . . So I don't think it's procedurally [defective]."

## B. Merits

Next, Spizzirri claims the trial court erred in granting the motion in limine because his lawsuit was legal, not equitable, in nature. We disagree.

"As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.'" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8.) """A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law.'" [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.] Although we have said that 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]. Thus, 'The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury . . . .'" (*Id.* at p. 9.) "[T]he *form* or *title* of a statutory cause of action is not controlling," rather, its substance controls. (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 315.)

Here, Spizzirri alleged claims for restitution, breach of fiduciary duty, and negligence. He concedes that restitution is "[a]n equitable principle . . .", but he contends the gist of his action is legal because his claims seek monetary damages, which are traditionally a legal remedy. (See *Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 695–696.)

10

Spizzirri's entire complaint arises from the theory that he is entitled to restitution following the 2012 judgment's reversal: "[W]hen a judgment is reversed on appeal the appellant is entitled to restitution of all things taken from him under the judgment. After reversal the respondent stands in the position of a trustee of appellant of the property obtained under the judgment. Restitution may be sought in the same or in an independent action." (*Levy v. Drew* (1935) 4 Cal.2d 456, 459.)

The above recovery theory is equitable in nature. As courts have explained, "[t]he exercise of power to restore benefits after reversal [of a judgment] has been declared to be discretionary." (*Schubert v. Bates* (1947) 30 Cal.2d 785, 791.) "'A person whose property has been taken under a judgment "is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable."'" (*Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1064.) "Whether a party is entitled to restitution following reversal 'present[s] a question calling for *judicial discretion in determining what equity required.*'"[5] (*Id.* at p. 1065, italics added; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 657–658 [determining restoration of benefits following a judgment's reversal is within the trial court's "'sound discretion controlled by equitable principles'"].) In sum, it is within the trial court's discretion to determine restitution following a judgment's reversal, and the court's exercise of that discretion is based on equity.

Spizzirri's claims all arise from the above equitable theory of recovery. His lawsuit seeks to recover the value Auto Orange purportedly lost

---

[5] We note that our Supreme Court has explained that the Code of Civil Procedure authorizes appellate courts to restore benefits lost after a judgment is reversed, but the trial court's power "to order restoration after reversal is inherent in that court." (*Schubert v. Bates, supra,* 30 Cal.2d at p. 789.) This distinction is immaterial to the outcome of this case.

due to defendants' mismanagement. But whether Spizzirri is entitled to any of that value or to any restitution at all is in the trial court's discretion. The court must determine what equity requires. (See *Gunderson v. Wall, supra,* 196 Cal.App.4th at p. 1064; *Munoz v. MacMillan, supra,* 195 Cal.App.4th at pp. 657–658.) Put differently, Spizzirri has no claims for breach of fiduciary duty or negligence if the court determines he is not entitled to any restitution. Thus, as the lower court concluded, his breach of fiduciary duty and negligence claims are ancillary to his equitable restitution claim.

## II.

### THE MOTION FOR JUDGMENT

Spizzirri has failed to show the court erred by granting the motion for judgment.

Section 631.8 enables "'"'the court, when it finds at the completion *of plaintiff's* case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' [Citation.] . . . [The] court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence.'" [Citation.] "'Because the trial court evaluates the evidence as a trier of fact, it may refuse to believe some witnesses while crediting the testimony of others.'""'[6] (*Orange County Water Dist. v. MAG Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 239.)

___

[6] "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, . . . or may decline to render any judgment until the close of all the evidence." (§ 631.8, subd. (a).)

On appeal, a judgment under section 631.8 is reviewed "the same as a judgment granted after a trial in which evidence was produced by both sides. In other words, the findings supporting such a judgment 'are . . . not erroneous if supported by substantial evidence.'" (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.) Challenges to the court's application of law are reviewed de novo. (*Ibid.*)

Spizzirri asserts the trial court erred by "granting judgment based on the court's belief that 'restitution' is only a remedy and that it could only be awarded if there were some independent wrongdoing." He maintains that under governing law, he was "entitled to be restored to the position he would have been in absent [defendants'] enforcement of [the 2012 judgment]," which is "the value of his membership interest in [Auto Orange] prior to the seizure."

The statement of decision does not indicate that the trial court granted the motion for judgment because restitution was "only a remedy" or because Spizzirri failed to show independent wrongdoing. Rather, the court ruled in defendants' favor because (1) "there [was] insufficient evidence to sustain a finding that Defendants mismanaged [Auto Orange] or its assets," (2) Spizzirri's damages were speculative, and (3) "it would be inequitable to provide an award of restitution to [Spizzirri]."[7]

Further, contrary to Spizzirri's assertion, he was not automatically entitled to restitution following the 2012 judgment's reversal. As discussed above, the trial court had discretion to determine whether

---

[7] To the extent the trial court made any oral statements at trial that restitution was only a remedy or that independent wrongdoing was required, "[t]he written statement of decision controls . . . ." (*In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1203.)

restitution was warranted based on equitable principles. (*Gunderson v. Wall, supra,* 196 Cal.App.4th at p. 1065; *Munoz v. MacMillan, supra,* 195 Cal.App.4th at pp. 657–658.) Based on the evidence Spizzirri presented, the court concluded restitution would be inequitable. And Spizzirri does not argue that its factual findings are unsupported by substantial evidence.

## III.

## EXCLUDED EVIDENCE

### A. E-mails from Defendants' Lawyer

Spizzirri contends that he sought to introduce e-mails with statements from defendants' former lawyer, Joshua Wolff, showing that defendants purposely aborted the Chrysler property deal. Defendants objected on hearsay grounds, and the court sustained their objection. Spizzirri contends these e-mails were admissible as either party admissions or to show defendants' state of mind.

We need not address this argument because Spizzirri has not provided record citations to support it. He specifically argues the trial court improperly excluded *e-mails* with Wolff's statements, a claim he repeats numerous times. But the cited portion of the record concerns a hearsay objection defendants made when Spizzirri questioned a witness about Wolff's statements over the *phone*.[8] Due to Spizzirri's lack of accurate citations, it is unclear what e-mails he believes were improperly excluded, what those e-mails contained, why the court excluded them, or whether it erred. We will not search the record to find error on Spizzirri's behalf. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

---

[8] We note that while the court sustained this objection, it allowed the witness to provide the testimony for a nonhearsay purpose: to show the effect of Wolff's telephonic statements on the witness.

14

Further, even if Spizzirri could show these e-mails were improperly excluded, he has failed to show any prejudice. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 [prejudice must be shown to warrant reversal].) Spizzirri sought to introduce e-mails purportedly showing that defendants aborted the Chrysler property deal a*fter* they took control of Auto Orange. However, the trial court found that Auto Orange was in poor financial condition *before* defendants took control, so it would be unfair to fault them for failing to rejuvenate it in a short amount of time. As the statement of decision explained, it would be inequitable to fault defendants for "failing to accomplish in a short amount of time what [Spizzirri] was unable to accomplish himself during his management of [Auto Orange]." Spizzirri has not shown a reasonable probability that these e-mails would have altered these findings. (See *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999 [setting forth reasonable probability standard].)

## B. Darras's Testimony

Spizzirri also sought to introduce testimony from Darras that defendants threatened him with criminal action if he and Ciabattoni did not transfer the Theater property from their respective trusts back to Auto Orange. The trial court excluded this testimony as irrelevant. It observed that Spizzirri's claims concerned defendants' alleged mismanagement of Auto Orange, and Darras's proposed testimony "seem[ed] to be outside of that." The court also noted that Darras's proposed testimony was prejudicial and appeared to be introduced "for an improper purpose to show that [defendants are] bad actors."

Spizzirri contends Darras's proposed testimony was relevant "to show that [defendants] obtained title to The Theater Property pursuant to

15

[the 2012 judgment] without paying for it and for no reason other than their threats." This "evidence was and is highly relevant to show the course of conduct by which [Defendants] came to have title to The Theater Property."

However, as the trial court correctly noted, Spizzirri's claims against defendants arose from their alleged mismanagement of Auto Orange. The manner in which defendants obtained the transfer of the Theater property from Ciabattoni and Darras to Auto Orange offers little probative value on this issue.[9] It is unclear how taking aggressive efforts to recoup lost assets on Auto Orange's behalf shows mismanagement. Rather, the relevant inquiry is what defendants did with the Theater property once it was transferred back to Auto Orange, which appears to have been outside the scope of Darras's proposed testimony. We also agree with the trial court that Darras's proposed testimony was unduly prejudicial, offering little probative value beyond portraying defendants as bad actors.

Finally, as with Wolff's e-mails, Spizzirri has not shown how the exclusion of Darras's testimony was prejudicial. It concerned events that occurred after defendants took control of Auto Orange. But, as discussed above, Auto Orange was already in poor financial condition when turned over to defendants. Thus, the trial court found it would have been inequitable to award Spizzirri restitution. Spizzirri has not shown a reasonable probability that Darras's testimony would have altered these findings.

---

[9] Spizzirri also repeatedly argues that "[t]he court was persuaded to a large degree by the fact that Mr. Darras is not a party to this case." However, nothing in the portions of the record Spizzirri cites indicates that the court excluded Darras's testimony for this reason.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, P. J.


SCHWARM, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.